LAND, J.
Plaintiff, as the duly licensed lessee of a public ferry across Bayou Lafourche at Itaceland, parish of Lafourche, enjoined defendant from maintaining and operating a free pontoon bridge within 400 feet from his public ferry landing. The petition set forth the lease of said ferry privi-. lege for two years at the price of $2,350, and alleges that the action of defendants has already damaged plaintiff in the sum of $784.46, and if not restrained will render his franchise entirely valueless. The plaintiff made the police jury a party to the suit.
The preliminary writ of injunction issued as prayed for, and defendants, after a vain attempt to dissolve on bond, filed their answer, first excepting that the petition disclosed no cause of action. Defendants denied that they were operating a free bridge as alleged, but averred that they had united for their own convenience, and had built and conducted, at a cost exceeding $500, a pontoon bridge over Bayou Lafourche at or near Raceland, solely for their own use. They further averred that the bridge was constructed at the joint expense and cost of the defendants, “each of them subscribed an amount as near proportionate as possible to what his expense would be in crossing the bayou over regular toll ferries during the year,” and that they employed a keeper *509 during the day to open the pontoon for the passage of boats, so as not to obstruct navigation, and that at night the pontoon was secured to one of the banks, so that vessels could pass freely. Defendants aver that the bridge was intended only for the use of subscrioers, and that they had given positive orders to their keeper not to permit any other persons to pass, and that at no time had they operated a pay or toll bridge. The answer contains many averments as to the legal right of the (defendants to maintain the bridge, and they allege that any law or ordinance to the contrary is violative to their constitutional rights, state and federal. Defendant prayed that plaintiff’s demand be rejected and the preliminary injunction dissolved, with damages.
There was judgment in favor of plaintiff, perpetuating the injunction and condemning the defendants to pay cost. Defendants have appealed.
There is little or no dispute as to the facts of the case. The toll ferry at Raceland was duly established by. ordinance of the police jury, and was duly leased unto plaintiff as alleged in his petition. The operation' of the pontoon bridge in the immediate vicinity diverted the patronage of the toll ferry to such an extent as to. render plaintiff’s franchise valueless. The combination of the defendants at the time of the trial included 174 subscribers, who paid various sums, ranging from $1 to $100, for the privilege of crossing the pontoon bridge. The subscription list was open to the public, and was not confined to the original subscribers. The answer ingenuously admits that among the subscribers the amount of each subscription was proportioned to the expenses of crossing over regular toll ferries.
It is conceded that Bayou Lafourche is a navigable stream wholly within the limits of the state of Louisiana.
The police power of the state over ferries and bridges has been delegated to the police juries of the several parishes. Section 2743 of the Revised Statutes of 1870, provided as follows, viz.:
“The police juries of the several parishes of the state (the parish of Orleans excepted)* shall have the exclusive privilege of establishing ferries and toll bridges within their respective limits.”
This section was amended and re-enacted by Act No. 202, p. 391, of 1902, so as to make the ninth paragraph, partly quoted above, read as follows, viz.:
“The police juries of the several parishes (the parish of Orleans excepted) shall have the exclusive privilege of establishing ferries and toll bridges within their respective limits, of fixing the rates of ferriage and toll to be charged thereon, and of generally regulating the police of the same. This privilege shall not extend to any ferries or bridges already established, until the expiration of their charters; nor to any ferries or bridges within the control of municipal corporations, save and except with the consent and approval of the counsel of the municipal corporation, who shall have authority to waive their jurisdiction in favor of the police jury: Provided no toll shall ever be charged on such bridge, and the said police juries shall have the right to lease the ferries within their respective parishes for any number of years not to exceed five and the lessees of said ferries shall give bond and security annually, payable to the president of the police jury, in such sum as may be required, for the faithful performance of their duties as public ferrymen.”
In 1896 the Legislature passed an act to protect lessees of public ferry privileges on streams in this state, and made it a misdemeanor for any person, not a lessee of a public ferry, to transport for pay or hire any person or persons in skiff or other craft, across any stream in this state, within a distance of two miles of any public ferry landing.
On January 26, 1905, the policy jury of the parish of Lafourche passed an ordinance making it unlawful for any person or combination of Iversons to construct or operate a free ferry or bridge- — that is to say, a ferry or bridge whereon no toll is charged — within three miles of any public toll ferry or *510 toll bridge constructed or operated by authority of the police jury of the parish of Lafourche. This ordinance was adopted more than two months prior to the institution of this suit.
We think it a self-evident proposition that the exclusive right of the police jury to establish and lease out public ferries and bridges is inconsistent with the right of individual citizens to operate ferries or bridges to such an extent as to render the exercise of such exclusive right nugatory. Ferries and toll bridges are leased for the purposes of public revenue, and no one would bid for the license to collect tolls, unless reasonable protection was guarantied against individual competition. The lawmaker, assuming that no person would make it a business to transport other persons across a stream free of charge, deemed it sufficient to forbid such transportation “for pay or hire.” The police jury, however, in the exercise of its delegated power to establish, lease, and regulate ferries and bridges, prohibited the construction and operation of a free ferry or bridge within a certain distance of any licensed ferry. As a matter of principle we do not think that it makes any difference whether the defendant’s bridge is free of toll, since the evil is the same. As a matter of fact, we are convinced by the evidence and all the circumstances of the case that every one who used the bridge paid for the privilege, and that it was open to all persons to contribute. It matters not whether the payment be called a subscription or a toll paid in advance.
Defendants cite Chapelle v. Wells, 4 Mart (N. S.) 426, where it was held that a section of a legislative act which prohibited any person from establishing a ferry within the limits conferred on the plaintiff did not prevent the defendant from using his own boat to cross the river, or lending it to his neighbors without charge for the same purpose.
In Chiapella v. Brown, 14 La. Ann. 189, where it was shown that the defendant, while charging nothing for the transportation of persons in his boat across the river, received indirect compensation from the charges he made for keeping their horses, the court held that the defendant was liable in damages for the infringement of plaintiff’s license, and in conclusion said that “the privilege of crossing one’s friends cannot extend to the whole community.”
In both of these cases the question was whether the defendant was keeping a public ferry, and the decisive inquiry was whether any compensation, direct or indirect, had been received.
In the case at bar it cannot be questioned that all the subscribers pay for the privi-' lege of crossing the ferry. The infringement of the exclusive right of plaintiff is the same whether tolls be paid or not. A combination to cross a large majority of the former patrons of plaintiff’s ferry cannot be assimilated to the case of an individual crossing himself and family or a few friends or neighbors as a matter of accommodation.
This question has been considered in other jurisdictions, and the consensus of judicial authority is summed up as follows:
“Every subtraction from the profits of a ferry by carrying, without license, its customers over the intervening waters, either for hire or without charge, is an infringement of the ferry franchise.” 12 Am. & Eng. Eney. Law (2d Ed.) p. 1099 et seq.
We subjoin a few extracts from the notes on pages 1100 and 1101, Id., as follows:
“In Gates v. McDaniel, 2 Stew. (Ala.) 211, 19 Am. Dec. 49, it was held that a free bridge, constructed without a license, was an infringement of a ferry license, in so far as the owner permitted its use by other than his family. See, also, Mason v. Harper’s Ferry Bridge Co., 17 W. Va. 396.”
“In Long v. Beard, 7 N. C. 57, it was held that a free ferry was an infringement of an established ferry; the court stating that the action for damages was given not because the defendants ‘have derived a benefit, but because the plaintiff has sustained an injury.’ ”
“In Dinner v. Humberstone, 26 Can. Sup.\ *511 Ot. Rep; 252, it was held that a ferry operated by a partnership of which any person could, by taking a share, become a member, and which' would entitle him to a certain number of trips across the ferry, was not a private ferry, and was an infringement of a licensed ferry within whose exclusive limits it was operated.”
In the same work in the text, on page 1101, we find the following principle enunciated:
“When an exclusive ferry franchise had been granted, such grant as heretofore stated, is protected by the provision of the Federal Constitution prohibiting the several states^ from passing any laws impairing the obligation of contracts, and therefore the Legislature cannot create a rival ferry without provision being made for the payment of damages for the injury which would be' caused thereby to such exclusive ferry.”
In the ease at bar the defendants have created a rival ferry, which has virtually deprived plaintiff of the benefits of his franchise. When we decide that defendants’ bridge is not a private ferry in the true sense and meaning of the term, defendants are left in the position of exercising a public franchise without a license. Defendants can have no vested right to run a public ferry, and therefore their constitutional complaints as to the divestiture of vested rights need no further consideration.
Act No. 202, p. 391, of 1902, is assailed as unconstitutional, being, it is argued, a special or local law granting to a corporation an exclusive right or privilege. See article 48 of the Constitution of 1898. The exception of the parish of Orleans from its operation did not make the act a local or special law in the sense of the Constitution. See Benedict et al. v. City of New Orleans, 39 South. 792, recently decided on rehearing. Moreover, article 48 refers to private corporations being used in conjunction with “association or individual.” “Noscitur a sociis.”
The ordinance of the police jury of January 26, 1905, is assailed as retroactive and therefore null. The said ordinance does not purport to apply to the past, but provides for the future. It makes it unlawful for any person or combination of persons to operate a free ferry or bridge within three miles of any public ferry or toll bridge operated or constructed by authority of the police jury.
Defendants’ contention that they have a legal right to maintain a pontoon bridge across a navigable stream without permit from the state or the police jury is not sustained by any authority. Rev. St. 1870, § 916, provides that whoever shall make, on the bank of any river or navigable stream, any work tending to make its navigation more difficult, shall on conviction be compelled to pay the sum of $100 for each offense, and the court shall further order the nuisance to be removed at the expense of the party convicted. A pontoon bridge completely obstructs navigation while in position, and obstructs the free use of the stream while moored to the bank. The fact that the keeper may open the bridge for the passage of boats does not affect the question. No bridge can be constructed over a navigable stream within the limits of this state without legislative authority, state or federal. The power to permit such an obstruction has not, as we are aware, been vested in the police juries of the parishes save in the case of streams ordinarily not navigable. See Goodwill v. Police Jury, 38 La. Ann. 752.
Judgment affirmed.