(42 South. 979.)

No. 16,292.

MURPHY et al. v. POLICE JURY, ST. MARY PARISH.

(Dec. 10, 1906. Rehearing Denied Feb. 4, 1907.)

1. PARISHES—RIGHTS AND REMEDIES OF TAXPAYERS.

Property holders and taxable inhabitants, complaining of no injury save such as is common to the community, but charging gross abuse of power, oppression, and fraud, have a standing in court to restrain the alleged illegal and unwarranted expenditure, by a police jury, of the funds of the parish.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Counties, § 308.]

2. APPEAL—REVIEW—OBJECTIONS WAIVED.

An attack upon the constitutionality of Act No. 94, p. 117, of 1898, comes too late when made for the first time in this court by an appellant who is before the court solely in virtue of an appeal authorized by said act.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 2, Appeal and Error. §§ 1037. 1038.]

3. PARISHES—POLICE JURIES—COURTHOUSES—REVIEW BY COURT.

The obligation to provide good and sufficient courthouses for their respective parishes, with proper rooms for jurors, and of determining how the money of which they have the administration shall be expended, is imposed by law upon the police juries, not upon the courts; and for the judiciary to meddle in such matters. where. as in this case, allegations of gross abuse of power, oppression, and fraud are wholly unsupported by proof, would be for it to invade the domain of other departments of the government, in violation of the express prohibitions of the Constitution.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Counties, §§ 204, 221.]

4. SAME—ESTIMATE OF EXPENDITURES.

A police jury is not required (by Rev. St. § 2745. or any law) to make out and publish its estimates of expenditures within the same year that it levies taxes to meet such expenditures; to the contrary, there are some reasons why such estimates should be made and published before the expiration of the preceding year.

5. SAME—"ESTIMATED EXCESS OF REVENUES."

The expression "estimated excess of revenues," in Act No. 32, p. 39, of 1902, is used in its ordinary sense, and it is a sufficient compliance with the provisions of that statute (to the effect that "no dedication of future revenues shall be made which. alone, or with other, prior, dedications in force, shall exceed the estimated excess of revenues," etc.) that a police jury, in good faith, though not necessarily by ordinance, and not necessarily for publication. makes an estimate of the future revenues (predicated upon the rates of taxation and expenditure), which, with reasonable certainty, will show the prospective existence of the surplus appropriated or dedicated; and this, in any given case requiring it, the courts will presume to have been done, unless there is proof to the contrary.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Counties, §§ 221. 300.]

6. SAME—APPROPRIATIONS—CONSTRUCTION OF ORDINANCE.

The meaning of ordinances of a police jury is to be ascertained by construing their

provisions together; hence, where one paragraph of a particular ordinance appropriates a lump sum for the building of a courthouse and succeeding paragraphs appropriate, for the same purpose, specific amounts, with interest thereon, from the surplus revenues of successive years, and, by another ordinance, a certain proportion of the tax of such successive years is dedicated to the principal and interest of the debt so provided for, it will be held that the intention is to make an appropriation to cover principal and interest, notwithstanding that the aggregate of the specific amounts so appropriated, with the interest, exceeds the lump sum first mentioned.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Counties, §§ 221, 300.]

7. SAME—TAXATION—LIMITATION OF AMOUNT.

Act No. 64, p. 100, of 1906, in limiting taxation "for ordinary parochial purposes" to eight mills, has no application to taxes levied for school purposes, and a police jury may levy taxes for ordinary parochial purposes up to the limit so fixed, provided the aggregate rate, including the tax levied for school purposes, does not exceed the 10-mill limit, "for all purposes, whatsoever," fixed by article 232 of the Constitution.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Counties, § 303.]

8. SAME — ERECTION OF COURTHOUSE — ORDINANCE.

Where a parish tax is levied on all property subject to parochial taxation, the allegation, unsupported by proof, that the property in a particular town is to be exempted, constitutes no ground for an attack upon an ordinance providing for the building of a courthouse and dedicating part of the parish tax therefor.

9. SAME—CONTRACT—REVIEW BY COURTS.

Act No. 32, p. 39, of 1902, prescribing the conditions and limits upon, and within, which parishes and municipal corporations may incur debt and issue certificates therefor in excess of the revenues of the year in which such debt shall be incurred, leaves it to the police jury to determine, in any given case, what manner of contract shall be made, and how the same shall be worked out, and the courts will not undertake to control those bodies in the exercise of the discretion so vested in them, save on proof of fraud, oppression, or gross abuse of power.

10. STATUTES—TITLE OF ACT—AMENDMENT—RE-ENACTMENT.

Act No. 32, p. 39, of 1902, does not contravene articles 31 and 32 of the Constitution, or either of them.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Statutes, §§ 127, 171, 209.]

(Syllabus by the Court.)

Appeal from Twenty-Third Judicial District Court, Parish of St. Mary; Charles Frank Borah, Judge ad hoc.

Action by John B. Murphy and others against police jury, St. Mary parish. Judgment for defendant. Plaintiffs appeal. Affirmed.

See 41 South. 647, 117 La. 355.

Donelson Caffery & Son, Henry D. Smith, Charles Austin O'Niell, John Gabriel Martel, James Rundlett Parkerson, Percy Saint, and J. Clifford Brown, for appellants. William K. Wilson, Dist. Atty., and Foster, Milling, Godchaux & Sanders, for appellee.

## Statement of the Case.

MONROE, J. John B. Murphy and George D. Palfrey bring suit as residents and taxpayers of the parish of St. Mary, and allege, in substance, that the police jury, assuming to be authorized by Act No. 32, p. 39, of 1902, have adopted an ordinance providing for the demolition of the existing parish courthouse and the erection of a new one at a cost of $115,000 and interest, or so much thereof as may be necessary, in accordance with the terms of a contract, the conditions of which are set forth, and that the proposed scheme is an illegal, unjust, useless, extravagant, fraudulent, oppressive, and unconstitutional infringement of the rights of the taxpayers and citizens of the parish, and calls for the issuance of an injunction. The grounds constituting the basis of these charges are stated to be:

(1) That the existing courthouse answers, and will answer for the present, and indefinitely for the future, all the purposes for which a courthouse is needed, and that the police jury have deliberately neglected the public roads and the needs of public education in order to swell the amount to be devoted to the erection of a wholly useless and extravagant building.

(2) That, in adopting the ordinance in question, the police jury caused no budget of expenditures for the year 1906 to be made and published, nor did they make any estimate of the surplus revenues to accrue during the term to be covered by the proposed contract, nor any appropriation to meet the interest on the debt to be incurred.

(3) That the money appropriated by said ordinance is to be derived from taxes to be imposed on property lying outside of the town of Franklin, from which the property within that town is to be exempted.

(4) That the ordinance in question does not follow the act of 1902, which contemplates the letting out of contracts, such as that for which it provides, at public bidding, after due advertisement and the issuance of certificates to contractors, whereas said ordinance practically authorizes the police jury to build the courthouse, through a committee, and through a builder to whom said police jury is to issue the certificates, without consideration, and then authorize the payment of laborers and materialmen from the fund in the hands of the builder, in the shape of certificates, which he may dispose of at will.

(5) That the act of 1902 is obnoxious to article 31 of the Constitution (in the matter of its title) and to article 32, in that it purports to amend Act No. 30 of 1877 (E. S.), but does not set forth in full the sections intended to be amended, and under the guise of amendment repeals the Act of 1877, and authorizes those things to be done which that act prohibits.

The police jury excepts that plaintiffs are without interest to prosecute this suit, and that their petition discloses no cause of action; and, answering, they allege that the existing courthouse was built in 1850 and has been condemned by successive police juries and by experts appointed to examine it, as unsuitable and unsafe for present purposes. They deny the charges made by plaintiffs and aver that the action complained of was not only authorized, but required, by law.

We find from the evidence that the existing courthouse was built in 1849 or 1850 at a cost of $12,000 (plus the material in the old courthouse, which was given to the builder); that in 1884 it became necessary to tie it together with log chains, and that at the date of the trial it was so dilapidated that those experts who examined it more carefully and who testified with greater particularity expressed the opinion that it was unsafe, though other experts were of a different opinion as to its safety, and thought that, with an expenditure of $25,000 or $30,000 (including the cost of erecting a separate building in which to preserve the records), it could be put in a condition to compare favorably with most country courthouses, and there was also a difference of opinion among the witnesses as to the accommodations afforded—some, including the learned judge who has held his court there for the last 20 years, being of opinion that they are inadequate, others holding to the contrary, save as to the records, which all parties agree are insufficiently provided for. There is no evidence tending to show that the parish will not get the value of its money in the building to be erected, or that, in deciding that it is better to erect a new courthouse than to repair the old one, the police jurors are actuated by any improper motive; and it is shown, on the other hand, that they have discharged their duties generally, with exceptional ability, that they and their predecessors have given the parish a leading position in the matter of schools and roads, and that when, in March, 1906, the ordinance here attacked was adopted, there was a surplus of over $13,000 in the treasury from the taxes of 1905, after payment of all expenses of that year. It further appears that a budget of expenditures for the year 1906 was adopted November 7, 1905, and duly advertised; and that on March 6, 1906, the

police jury adopted an ordinance reading, in part, as follows:

"Section 1. * * * That this police jury do proceed at as early a date as practicable to the demolishing of the present courthouse * * * and the erecting * * * of a new courthouse.

"Sec. 2. * * * That, for the purpose * * * of demolishing the old, and constructing a new, courthouse * * * the sum of $115,000.00, or so much thereof as may be necessary, be, and the same is, hereby appropriated and set aside, * * * said appropriation to be made in the following manner: The sum of $10,000, now in the treasury, * * * being the surplus revenues for the year 1905.

"The further appropriations shall be made as follows: The sum of $10,000 out of the revenues of the year 1906, with five per cent per annum interest thereon. [Then follow similar appropriations, of $10,000 and interest for each of the years 1907, 1908, 1909, 1910, and of $11,000 and interest for each of the years 1911, 1912, 1913, 1914, 1915.]

"Sec. 3. * * * That the appropriations herein made out of the ten subsequent years, beginning with the year 1906 and ending with the year · 1915, shall be paid after first paying all statutory charges, all charges for services rendered annually under time contracts, and all necessary and usual charges provided for by ordinance or resolution, and that the appropriations herein made are out of the excess of the revenue after said charges are paid.

"Sec. 4. * * * That the credit portion of the foregoing appropriation * * * shall be authenticated and evidenced by certificates of payment, each bearing date of —— 1st, 1906, and payable on the first of March, 1907, to 1916, inclusive. Said certificates shall bear 5% per annum interest, payable annually, from date until paid.

"Sec. 5. * * * That the president of the police jury * * * be and he is hereby authorized to enter into a contract with a builder, to be named by this body, for the purpose of constructing the courthouse aforesaid. That the certificates herein named shall be issued to said builder in payment of the expenses incurred in constructing said courthouse. That said contract shall be entered into with said builder upon a commission basis; that is, the said builder shall agree that the courthouse shall not cost exceeding a certain sum and shall bind and obligate himself to apply himself to the construction of the same and to make it cost no more than just such sum as is commensurate with the character of the building; that the said builder shall not be paid exceeding ten per cent of the cost of the building, which limit shall include ·both the services of said builder in superintending the construction of said courthouse and the cost of the plans and specifications of said building; that the money herein appropriated * * * shall be expended under the direction of the building committee and the finance committee .hereafter to be appointed.

Said expenditure shall be made in such manner and under such restrictions and regulations as will be named by this police jury in another resolution."

Another resolution, of the same date, provides for the appointment, by the president of the police jury, of a finance committee, to be composed of not less than nine, nor more than fifteen, police jurors and citizens, and a building committee, to be composed of not less than five, nor more than nine, police jurors and citizens, with the president of the police jury as chairman, which committee is given "full authority and control over the construction of said courthouse"; and the resolution further provides as follows:

"Sec. 2. * * * It shall, further, be the duty of the building committee to consult with the builder and approve all orders for materials, examine and scrutinize all bills for materials and bills for labor which shall be presented to it by the builder and approve the same, when satisfied of their correctness. For all approved bills the chairman of said committee shall draw a voucher for the payment of the same upon the finance committee hereinabove ·constituted, attaching to each voucher the bill for which it is drawn, which voucher shall be countersigned by the builder, and when it is presented to the finance committee, said committee shall examine and audit said bills and vouchers, and, when satisfied of their correctness, shall enter the same, which shall authorize the president of the police jury to pay the same out of the funds. herein appropriated.

"Sec. 3. * * * It shall be the further· duty of these committees to have prepared all necessary books and papers; to keep the same· posted from day to day so that the amount of money expended shall, at all times, be known; and it shall be the duty of each committee to· make a report of the acts and doings to the police jury at each regular meeting that may be held by that body during the time that the building is being erected, and, when said building shall have been completed, to make a full and exhaustive report to said police jury.

"Sec. 4. * * * That the chairman, or any three members, of either committee, or the· president of the police jury, shall have authority, at any time, to call a special meeting of the police jury to consider any matter that may arise with reference to the construction (of) or payment for, the courthouse as aforesaid."

By another resolution, of the same date, F. B. Hull was selected by the police jury as the builder of the courthouse.

By ordinance of March 20th a tax of nine-

mills was levied on all property subject to parochial taxation, and by another ordinance, of the same date, it was provided that:

"2¾ mills, of the 9-mill parish tax, * * * or as much thereof as may be necessary, be, and the same is, hereby levied, appropriated and set aside for the purpose of paying the debt authorized to be contracted by the police jury in the erection of a courthouse; * * * that the tax thus set aside shall be for the years 1906 to 1915, inclusive, and that this ordinance and dedication of the two and three quarter mills taxed herein, or as much thereof as may be necessary, shall remain in force and said tax be levied and collected and set aside, each and every year, for the purpose of discharging said obligation, in principal and interest, for the entire life of said debt, to wit, up to the end, including the year 1915."

By still another ordinance, of March 20th, the surplus of the year 1906, as based on the actual receipts and expenditures of 1905, was declared to be $15,618.88, and, as based upon the estimates for 1906, was declared to be $22,590.

Further than this, the record shows that, as far back as 1902, both the grand and the police juries had reported that a new courthouse should be built, that action of a similar character had been taken by those bodies on several subsequent occasions, and that in 1903 the police jury were proceeding to contract for the work when the yellow fever appeared and the matter was dropped.

### Opinion.

Plaintiffs are shown to be citizens and tax payers of the parish of St. Mary, and, for the purposes of the question of their right to prosecute this suit, are within the rule stated by this court as follows:

"The right of property holders, or taxable inhabitants, is recognized to resort to judicial authority to restrain municipal corporations and their officers from transcending their lawful powers or violating their lawful duties in any unauthorized mode that will increase the burden of taxation or otherwise injuriously affect tax-payers and their property, such as an unwarranted appropriation and squandering of corporate property, an illegal levy and collection of taxes, not due and exigible," etc. Dillon's Mun. Corps. (4th Ed.) p. 1103 et seq., § 914 (note,

p. 1108 et seq., citing Conery v. N. O. Water-works Co., 39 La. Ann. 770, 2 South. 555; Crampton v. Zabriskie, 101 U. S. 601, 25 L. Ed. 1070).

The point made by plaintiffs' counsel, for the first time, in the brief filed by them in this court, that Act No. 94, p. 117, of 1898, is unconstitutional, and hence that the judgment appealed from, rendered under the authority of that act in chambers, is invalid, because not read in open court, cannot be considered, for the reasons that it is made too late and that plaintiffs are before this court solely by virtue of an appeal granted under the authority of said act.

1. Considering the other grounds relied on by plaintiffs, in the order in which they have been heretofore stated:

The obligation to provide "good and sufficient" courthouses for their respective parishes, "with proper rooms for jurors," and of determining how the money of which they have the administration shall be expended is imposed upon the police juries, not upon the courts; and, for the judiciary to meddle in such matters, save for the purpose of preventing fraud, oppression, or gross abuse of power, would be for it to invade the domain of other departments of the government, in violation of the express prohibitions of the Constitution. Rev. St. §§ 2745, 2746; Const. arts. 16, 17; Taxpayers v. Sewerage & Water Co., 108 La. 583, 32 South. 563; Dupuy v. Police Jury, 115 La. 586, 39 South. 627; Dillon on Mun. Corps. (4th Ed.) vol. 1, pp. 151, 152, § 94; A. & E. Enc. of Law (2d Ed.) vol. 20, pp. 1229, 1230.

2. The police jury adopted its budget of expenditures in November, 1905. This was done agreeably to the provisions of the Revised Statutes (section 2745), which reads:

"The police juries, before they shall fix and decide on the amount of taxes to be assessed for the current year, shall make out an estimate exhibiting the various items of expenditure, and shall cause the same to be published in the official newspaper * * * at least thirty days before their meeting to fix and decide on the amount of taxes to be assessed as aforesaid."

The words "current year," as used in the statute, relate, we think, to the year in which the taxes are levied and assessed, and their use does not militate against the theory that the budget of expenditures may be adopted before the beginning of such year. In fact, where the tax (as in the case of the license tax) is required to be levied at the beginning of the current year (Act No. 171, p. 387, of 1898, § 2), such a course is essential to its validity. Parish of Lincoln v. Huey, 30 La. Ann. 1244; Police Jury v. Bouanchaud, 51 La. Ann. 360, 25 South. 653; Constant, Benjamin et al. v. Parish of East Carroll et al., 105 La. 286, 29 South. 728; Sheriff v. Daigle, 107 La. 510, 32 South. 94. The learned counsel for plaintiffs interpret the decision in State ex rel. Hutchinson v. Lockett, Sheriff, 52 La. Ann. 1620, 28 South. 157, as holding that the budget of expenditures must be adopted in the same year that the taxes are levied, but, by reading the decision referred to more carefully, they would have discovered that such is not its meaning. The difficulty in that case arose from the fact that the police jury having in November, 1899, adopted a budget of expenditures for 1900, the relator on January 2, 1900, before the license tax had been levied, demanded a license for the year, under the ordinance levying that tax for the year 1899, which ordinance had been based on a budget adopted in November, 1898, and the court held (quoting the syllabus) that:

"Police juries are required to adopt estimates of expenses for one year at a time, and each ordinance fixing licenses must be based upon the estimate for the year for which the license is fixed."

As to the tax, or source from which the money to be expended is to be derived, we find it provided, in section 2 of Act No. 32, p. 39, of 1902, that:

"No dedication of future revenues shall be made, which, alone, or with other, prior, dedications in force, shall exceed the estimated excess of revenues over the statutory, necessary and usual charge," etc.

But the words "estimated excess of revenues" are used in their ordinary sense, and not in connection with any such mandatory directions as precede and follow the use of the word "estimated" in the section of the Revised Statutes above quoted, and which require that the police jury shall make out an estimate exhibiting the "various items of expenditure and shall cause the same to be published," etc.; the reason for such requirements being that the taxpayers may be advised of the quantum and objects of the burthens that are about to be imposed upon them for parochial purposes, and may be afforded an opportunity to exercise a healthful, restraining influence upon the local legislation on that subject. Wilson v. Anderson, 28 La. Ann. 261; Sheriff v. Daigle, 107 La. 512, 32 South. 94. If the lawmakers had considered it necessary that, after making out and publishing an itemized statement of their proposed expenditures, the police jury should also make out and publish an itemized estimate of their prospective receipts, showing, in detail, how the surplus dedicated, for a series of years, in advance, is to be obtained, they would, doubtless, have so expressed themselves. Under the law, as it reads, it seems to us sufficient that, in appropriating or dedicating such surplus, the police jury should, in good faith, though not necessarily in the form of an ordinance, and not necessarily for publication, make an estimate (predicated upon the rate of taxation and expenditure), which, with reasonable certainty, will show the existence of the prospective surplus appropriated or dedicated, and this the courts, in absence of allegation and proof to the contrary, will presume to have been done. In the instant case, upon March 20, 1906, a detailed estimate of both receipts and expenditures was adopted which showed that, upon the basis of a nine-mill tax, actually levied, in 1905, there should be a surplus, after payment of statutory and

usual charges, of $15,618.88 (of which over $13,000 was then in the parish treasury), and that for 1906, upon the same basis and with the same dedications, there should be a surplus of $22,590. To have gone into further detail, and to have estimated separately the surplus for each of the 10 years for which it is dedicated, would have been mere repetition, not required by law, and subserving no useful purpose.

The objection that no appropriation has been made to meet the interest upon the debt to be incurred is answered by the ordinances referred to in the statement which precedes this opinion. It is true that, in the ordinance of March 6, 1906, the sum of $115,000 is first appropriated in a lump sum, but this is immediately followed by successive appropriations of $10,000, payable from the surplus of each of the years 1906, 1907, 1908, 1909, 1910, and of $11,000 from the surplus of each of the years 1911, 1912, 1913, 1914, and 1915, "with 5% interest per annum thereon," which interest is made payable annually from the date of the issuance of the certificates, so that the whole amount of the interest is to be paid, together with the $10,000 or $11,000 of the principal provided for, from the surplus of each succeeding year as the term of the contract advances; and, "for the purpose of discharging said obligation, in principal and interest, for the entire life of said debt, up to, and including, the year 1915," there is, "levied, appropriated and set aside 2¾ mills, of the 9 mills, parish tax, * * * or as much thereof as may be necessary."

The learned counsel for plaintiffs (in the brief filed by them in this court) say:

"An important factor in this controversy is Act No. 64, p. 100, of 1906, by which parochial taxation is reduced to eight mills, except in parishes where there is an interest-bearing indebtedness outstanding. Are the certificates of indebtedness provided for in this ordinance outstanding? Can they be outstanding when not issued and when there is no contract requiring their issuance? If not, then the estimate based upon a tax rate of 9 mills is palpably erroneous and illegal, and must be annulled."

Though this question is not, specifically, raised by the pleadings, its decision seems to be necessary to a satisfactory determination of the issues which are so raised, and it will, therefore, be considered. We find that by article 254 of the Constitution, and Act No. 214, p. 422, of 1902, § 63, police juries are authorized to levy, for the support of the public schools, a tax of 6 mills, provided that the parish tax, "for all purposes whatsoever," shall not exceed 10 mills, as fixed by article 232 of the Constitution, and that, by the same statutory enactment, police juries are prohibited from levying taxes for school purposes at a lower rate than 1¼ mills. Upon the other hand, the act of 1906, to which counsel refer, provides that:

"No tax, for ordinary purposes, shall be levied * * * in excess of eight mills, * * * except in the City of New Orleans and parishes which have an unmatured interest-bearing indebtedness, or, which are required by law to share their alimony with one or more municipalities, or, for the taxes of 1906 and 1907, in those parishes whose taxing power does not extend into any city situated therein, in which last named parishes said reduction shall become effective for the taxes of 1908 and subsequent years."

Construing these constitutional and statutory provisions together, it appears that whilst the limit of parish taxation, "for all purposes whatsoever," is fixed by the Constitution at 10 mills, there is special authority for the inclusion in such rate of a tax of six mills for the support of the schools, from which it follows that if a particular parish, acting under the authority of the Constitution, levies a school tax of six mills, and if the act of 1906 be held to apply to taxes levied for all purposes (including schools), there would be left only a tax of two mills from which to pay the ordinary parochial expenses of the parish, a condition which, from common knowledge of parish requirements, the court would find it difficult to believe the General Assembly intended.

to bring about. It will be observed, however, that the act of 1906 in limiting the rate of parish taxation to eight mills applies, not to taxes levied "for all purposes whatsoever," but to taxes "for ordinary parochial expenses," so that, as we construe the act, a police jury may levy a tax of eight mills, exclusive of the tax levied for school purposes, provided the whole parish tax, including that levied for school purposes, does not exceed the constitutional limit of ten mills; and, as it is shown that the parish of St. Mary levies a tax of three mills for school purposes and six mills for all other purposes, the aggregate tax of nine mills is within the limits of both the act of 1906 and of article 232 of the Constitution.

3. It is said that the money appropriated for the building of the courthouse is to be derived from taxation imposed upon property in the parish at large, from which the property in the town of Franklin is to be exempted; but the police jury have levied the tax in question for the year 1906 on all property subject to parochial taxation, and it is to be presumed that they will do so in the future. If, therefore, the property in the town of Franklin is subject to parochial taxation, it will be reached by the tax, and that it may unlawfully escape cannot affect the present authority of the police jury to provide for the building of a courthouse.

4. The objection is made that the ordinance here attacked does not follow Act No. 32, p. 39, of 1902, in that it provides for the employment of a builder who is to receive a commission upon the labor and material to be expended in compensation for his services; to whom the certificates authorized by the act are to be issued in payment; and who is to be superintended by a committee, to be appointed by the president of the police jury and composed of police jurors and citizens; whereas the statute requires that such work shall be done under a contract, let out at public bidding, and that the certificates shall be issued to a contractor.

The pertinent provisions of the ordinance are embodied in the statement which precedes this opinion. Those of Act No. 32, p. 39, of 1902, read as follows, to wit:

"Sec. 2. * * * Police juries and municipal corporations shall, also, have authority to make, in any year, agreements and contracts dedicating, in whole or in part, the excess of annual revenues of subsequent years, above statutory, necessary and usual charges; provided, that no such agreement or contract shall have any longer term fixed for payment than ten years from the date of the agreement or contract; and, provided, further, that no dedication of future revenues shall be made, which, alone, or with other, prior, dedications in force, shall exceed the estimated excess of revenues over the statutory, necessary and usual charges of the year in which the agreement or contract is made.

"Sec. 3. * * * That parishes and municipal corporations shall have authority to issue certificates of payment covering that portion of the cost of public improvements which, by existing laws, is to be borne by parishes and municipalities under contracts payable out of the revenues of subsequent years as provided in section 2 of this act. Such certificates shall bear such rates of interest as may be fixed by the contracts under which they are issued, but said interest shall never exceed five per cent per annum. Such certificates shall have no other effect than to furnish prima facie evidence that the contractor is entitled, for work done, at the prices fixed by the contract, to a fixed amount of money, provided all stipulations of the contracts under which such certificates have been issued have been complied with."

By this law the police jury were unquestionably authorized in 1906 to enter into a contract for the building of a courthouse, to be paid for out of the surplus revenues of that year and the succeeding nine years, and the ordinance under consideration unquestionably provides for the making of such a contract in a way whereby the building contractor receives, as his compensation, or profit, a fixed percentage upon the entire cost of the labor and material necessary to the completion of the work, rather than in another way, whereby he would receive a lump sum in which would be included such compensation or profit. It is a matter of common knowledge that such contracts are made in either of these ways, and, as the lawmakers

have not restricted the police jury to the one rather than the other, it is to be presumed that the choice was left to their discretion. That they propose to secure to themselves the right, through their agents (their own members and citizens selected by their president), to inspect the material, supervise the work, and audit and pay the bills seems to us conservative and commendable, and, whilst the precise manner in which the certificates are to be handled and realized upon is not specified, that is a detail which is also within the control of the police jury, and we are of the opinion that the act of 1902 does not require, or contemplate, that the certificates authorized by it shall, of necessity, be issued directly to the contractor (though, no doubt, they should be identified with the contract), nor can it be assumed, upon the basis of mere allegation, unsupported by proof, and at variance with those provisions of the ordinance in question, which vest in them the control of the proceeds, that the police jury will part with the certificates without consideration or will otherwise misappropriate them.

5. The constitutionality of Act No. 32, p. 39, of 1902, is challenged upon the grounds that it "contains more than one object in its title," and that "purporting to amend and re-enact Act No. 30, Extra Session of 1877, it does not set out in full the sections of the act amended, but amends said act by reference to its title only." The title of the act of 1902 reads as follows:

"An act to amend and re-enact Act No. 30 of the General Assembly of 1877, Extra Session, approved March 28, 1877, entitled 'An act to limit the appropriations and expenditures of parishes and municipal corporations; to prohibit the issue of warrants by their officers; to permit police juries to make certain contracts; and prescribing certain penalties'; to permit police juries and municipal corporations to make contracts against future revenues, within certain restrictions; to permit police juries and municipalities to issue certificates of payment and to provide the effect to be given to such certificates; and to permit municipalities to borrow money in case of public emergency."

118 LA.—14

The object of the act is (as expressed in this title) to prescribe the conditions and limits upon, and within, which parishes and municipal corporations may contract debt and issue certificates therefor, in excess of the revenues of the year in which such debt may be contracted, and to prohibit them, under penalty, from passing the limits thus prescribed. The amendment and re-enactment of the act of 1877 and some additional legislation are the means adopted for the accomplishment of that object, and they are all germane thereto. In so far as the act of 1877 is dealt with, its provisions are re-enacted in accordance with article 32 of the Constitution, which requires, not the re-enactment of the law, to be amended, but the re-enactment and publication of the law "as amended." It might, perhaps, be made a subject of criticism that the act does not answer the call of its title, in that, whilst the title describes it as an act to amend and re-enact the act of 1877, etc., it is not thereafter specifically declared that the act of 1877 is thereby amended. The purpose to amend is, however, made manifest by the fact that the portions intended to be affected are re-enacted "as amended," which is all that is required; moreover, considering the whole title and body of the act of 1902, that purpose would be accomplished by it as a piece of independent legislation, even though the act of 1877 had not been mentioned at all, since the amendatory provisions are fully covered by that portion of the title which follows the recital of the title of the act of 1877. "The main question in this case," say plaintiffs' counsel in concluding their brief, "is whether the police jury has violated the duty imposed upon it by law in providing for a large and costly building for a courthouse for the parish of St. Mary when the present courthouse has been found safe, sound, and suitable for many years."

For the reasons given, we are of opinion

that this question must be answered in the negative. The judgment appealed from is accordingly affirmed.