## CASES ARGUED AND DECIDED IN THE SUPREME COURT OF LOUISIANA

---

AT TERM BEGINNING FIRST MONDAY OF OCTOBER, 1919

AND

AT TERM BEGINNING FIRST MONDAY OF OCTOBER, 1920

---

(84 South. 433)

No. 23194.

### CLARK v. CITY OF OPELOUSAS.

(June 30, 1919. On Rehearing, April 5, 1920.)

*(Syllabus by Editorial Staff.)*

1. **Municipal corporations** ⬡280(1)—**Statutes** ⬡94(2)—**City held entitled to initiate street proceedings without petition of abutting owner.**

City governed by the general municipal statute (Act No. 136 of 1898) had power to initiate proceedings for street improvements, notwithstanding section 34, as amended and re-enacted by Act No. 131 of 1904, requiring petition of abutting property owners; such provision being in effect amended by Act No. 241 of 1912, amending Act No. 10 of 1896, the act of 1898 not being a special or local law, in view of Const. 1898, art. 48.

2. **Statutes** ⬡162, 163—**General law can be amended or repealed only by general statutes.**

A general law cannot be amended or repealed by special or local statutes, but either general or special law may be amended or repealed by general statutes.

3. **Estoppel** ⬡62(5)—**Municipal corporations** ⬡319—**City and abutting owners, after receiving benefits of street improvement, are estopped to complain of irregularities in the proceeding.**

After street improvement has been completed and in a large measure paid for, and both the city and property owners have received the benefits thereof, neither the city nor property owners could complain of irregularities in proceeding.

On Rehearing.

4. **Evidence** ⬡25(2)—**Court will take judicial notice of class of municipality to which city belongs and powers conferred.**

Under Act No. 136 of 1898, § 42, court will take judicial notice of class of municipalities to which the city of Opelousas belongs and of the powers conferred by the statute.

5. **Statutes** ⬡68—**May be general notwithstanding inapplicability to all locations in state.**

A statute general in its terms is not to be regarded as local or special law as contradistinguished from a general law merely because the conditions under which the law may operate

147 LA.—1                                                    2

or have effect do not prevail in every locality in the state.

Monroe, C. J., dissenting.

Appeal from Sixteenth Judicial District Court, Parish of St. Landry; B. H. Pavy, Judge.

Action by H. T. Clark against the City of Opelousas. Judgment for plaintiff, and defendant appeals. Affirmed.

Peyton R. Sandoz, of Opelousas, for appellant.

William J. Sandoz, of Opelousas, for appellee.

DAWKINS, J. Plaintiff sues the city of Opelousas on certain certificates of indebtedness given in payment for certain pavement work done on its streets. We quote one of the certificates as follows:

"19367.

"United States of America, State of Louisiana, City of Opelousas.

"Certificate of Indebtedness for Gravel Pavement.

"Opelousas, Louisiana, March 4, 1914.

"This is to certify, that the city of Opelousas, Louisiana, is indebted unto H. T. Clark, contractor, in the sum of eight and 34/100 dollars, together with eight (8) per cent. interest, interest payable annually, from the date hereof until paid, together with ten (10) per cent. additional on amount of principal and interest unpaid, if sued upon, payable to the order of the said H. T. Clark, one year from this date, out of the funds derived from the special assessment, levied by the board of aldermen of the city of Opelousas, Louisiana, of date March 4, 1914, against the following described property, and the owner, to wit: [Here follows name and description of property], on account of said gravel pavement abutting said property, the entire proceeds of which said special assessment are dedicated to the payment of this certificate and interest, and the other four certificates and interest of this series, together with attorney's fees fixed at ten (10) per cent. on amount of principal and interest remaining unpaid, if sued upon, and being one-fifth part of the balance due the said H. T. Clark, on account of the said gravel pavement construction, as per his con-

tract with the said city of Opelousas, Louisiana, of date November 5, 1913, and of record in the office of the clerk of court of the parish of St. Landry, La.

"The interest to accrue on this certificate from date until maturity, being represented by coupons hereto attached, which, with the amount of this certificate, are to be paid to the holder at maturity by cash warrant of the mayor, upon surrender thereof, out of the funds which have been specially appropriated therefor by ordinance of the board of aldermen of the city of Opelousas, Louisiana, adopted on the 4th day of March, A. D. 1914.

"E. L. Loeb, Mayor.

"Attest:

"J. B. A. Stagg, City Clerk."

Attached to the certificate are five coupons, one of which we also quote as follows:

"$0.67.

"On March 4, 1915, after date, the city of Opelousas, La., will pay to the holder of the certificate to which this coupon is attached the sum of sixty-seven cents dollars, being one year's interest on said certificate.

"Certificate No. 2.    E. L. Loeb, Mayor."

The total amount claimed is $150.53, with interest and attorney's fees, and the plaintiff seeks to have recognized a lien and privilege upon the property of the nine abutting owners for whose portion of the pavement the certificates were given. He also asks that the defendant, city of Opelousas, be compelled to institute proper proceedings against said owners for the enforcement of said liens by seizure, advertisement, and sale of the property, if necessary, for the payment of said debt. All of the nine certificates, with coupons, etc., are attached to and made part of the petition.

Defendant city appeared and filed an exception of no cause of action, which was overruled, and it thereupon filed a prayer for oyer to require plaintiff to produce the ordinances of the city and contract under which the work was alleged to have been done. These documents having been produced, it filed answer, attacking the validity of the ordinances under which the special

assessments to pay for the pavement were levied, upon the following grounds:

(1) That said assessments were not levied in conformity with section 34 of the charter of the city of Opelousas, which defendant contends was the sole authority under which the same could have been done.

(2) That the action of the city was not preceded by petition of the property taxpayers as required by said section.

(3) That the said ordinances purport to have been adopted under the provisions of Act No. 10 of 1896, as amended by Act 241 of 1912, but fails to comply even with these statutes, in that it attempts to impose upon the property owners the entire burden of the pavement, instead of requiring the city to pay one-third thereof, as provided in said acts.

Apparently in anticipation of a plea of estoppel on the part of plaintiff, the answer then denies that the city is estopped, for the reason that the ordinances, certificates, coupons, etc., were prepared by the attorney of the plaintiff and adopted in accordance with his request, notwithstanding the opinion of the city's attorney, expressed at the time, that the same did not conform with the law, and were accepted by plaintiff with full knowledge of their infirmities. Defendant further denied that the said certificates carry any lien or privilege upon the abutting properties.

The lower court gave judgment in favor of plaintiff and against the city for the amount claimed, with interest and attorney's fees, and ordered the defendant to proceed to the collection of the special assessments levied against the abutting properties as described in plaintiff's petition and as provided in the ordinances of defendant city, and that the proceeds thereof be applied by preference and priority to the payment of plaintiff's claims.

From said judgment defendant city prosecutes this appeal.

## Opinion.

[1, 2] There is nothing in the record to show under what law the city of Opelousas is incorporated, but it is alleged in the answer, and not disputed in plaintiff's brief, that it is governed by the provisions of the general municipal statute (Act No. 136 of 1898), and we assume that this is true. Defendant insists that in the matter of improvements of the kind involved in this litigation, the action of the city must be preceded by a petition of the abutting property owners, as required by section 34 of said Act 136 of 1898, and that the work cannot be done on the initiative of the city alone, as provided by the Act No. 10 of 1896, as amended by Act No. 241 of 1912. However, the two acts last mentioned make no exceptions in their application to municipalities (other than the city of New Orleans) where the population exceeds 10,000, and it is a general rule of judicial construction that, while a general law cannot be amended or repealed by special or local statute, either a general or special law may be amended or repealed by general enactment. The effect, therefore, of the Act No. 241 of 1912, passed subsequently to the Act No. 136 of 1898, was to amend the provisions of section 34 of the latter act, so as to eliminate the necessity for the petition of the property owners, where the municipality itself wishes to act, and to vest in the governing authorities of municipalities having populations in excess of 10,-000, the power to initiate proceedings for such improvements.

The title of Act No. 241 of 1912 reads as follows:

"An act to amend and re-enact Act 10 of 1896, entitled 'An act to empower cities and towns (the city of New Orleans excepted) having a population exceeding ten thousand and

all incorporated parish seats, to pave, macadamize or otherwise improve streets and alleys and to levy and collect special taxes and local contributions on real estate abutting the same to defray a part of the cost of such work or improvement."

In its body, the statute proceeds to authorize such municipalities to have the work done, on the basis of one-third of the cost to the city and two-thirds to the abutting property owners, with certain provisions for cases where streets are occupied by railroads, and provides that the ordinance levying such assessment, when recorded in the mortgage office of the parish, shall operate as a lien and privilege in favor of the city against the abutting property, inferior only to state and parish taxes, for principal, interest, and 10 per cent. attorney's fees, if collected by suit. It also authorizes the city to proceed judicially for the enforcement of such assessments against the property. The right is also given to the municipality, in its discretion, to allow the property owner to pay his assessment in installments of 20 per cent. cash, the balance in annual payments, not to exceed five years, with 8 per cent. interest, payable annually.

[3] The record shows that the property owners were only assessed for their two-thirds of the cost of the improvements, as required by the statute, and that the city has already paid its one-third, including the cost of paving the intersection of streets and alleys. Most of the property owners have also paid their assessments, and those named in the certificates sued upon are among the few who have not paid. The work was promptly and properly completed to the entire satisfaction of all concerned. We are unable to find anything in the record to show that the law applicable to the case was not fairly complied with. On the other hand, it seems to have been followed almost literally. In any event, we think it too late, after the work has been completed, and in large measure paid for, both the city and property owners having received the benefits thereof, for either of them to complain, and that the plea of estoppel, on that score, was properly maintained. Barber Asphalt Co. v. King, 130 La. 790, 58 South. 572.

For the reasons assigned, the judgment appealed from is affirmed, at the cost of the appellant.

### On Rehearing.

O'NIELL, J. [4] Our decree in this case rests upon the conclusion that the city of Opelousas, being a parish seat (although it has less than 10,000 inhabitants), was governed by the Act 241 of 1912, in regard to the paving of streets, notwithstanding the municipality had adopted the provisions of the Act 136 of 1898, for the government of the city generally. By the terms of section 42 of Act 136 of 1898, we must take judicial notice of the class of municipalities to which the city of Opelousas belongs, and of the powers conferred by the statute.

With regard to the proceedings for paving the streets of a municipal corporation, Act 131 of 1904 (being an amendment and re-enactment of section 34 of Act 136 of 1898) was superseded by Act 241 of 1912 only in cities having more than 10,000 inhabitants and in parish seats.

Counsel for appellant argues that Act 136 of 1898 is a special or local law, as contradistinguished from a general law, and that therefore section 34 of the act, as amended and re-enacted, by Act 131 of 1904, could not be superseded or affected by Act 241 of 1912, even in parish seats or in cities having more than 10,000 inhabitants. The only reasons that are or could be urged for characterizing the Act 136 of 1898 as a special or local law, as contradistinguished from a general law, are, first, that the provisions of the act are declared not applicable to any existing corporation, unless, by a vote of the electors, it

should be determined to adopt the provisions of the statute; and, second, that the act declares that it shall not apply to cities containing more than 200,000 inhabitants.

If we should hold that the Act 136 of 1898 is a special or local law, as contradistinguished from a general law, it would be unconstitutional in so far as it purports to govern municipal corporations having a population less than 2,500 inhabitants, because the General Assembly was, by article 48 of the Constitution of 1898, forbidden to enact any local or special law creating a municipal corporation having a population less than 2,500 inhabitants, or amending, renewing, extending or explaining the charter thereof. See State ex rel. Fortier v. Capdevielle, 104 La. 563, 29 South. 215.

To adjudge the Act 136 of 1898 a special law, as contradistinguished from a general law, would therefore, in effect, abolish every municipal corporation in Louisiana that has less than 2,500 inhabitants and claims corporate existence under and by virtue of the statute of 1898.

But the statute of 1898 cannot be regarded as a special or local law, for either of the reasons stated. The provision that the act shall not apply to a city having more than 200,000 inhabitants means nothing more than that the act does not apply to the city of New Orleans. For New Orleans was, in 1898, and is yet, the only city in the state having more than 200,000 inhabitants. There is not in this state another city that has ever had one-fourth as many as 200,000 inhabitants.

No one can doubt, therefore, that the only purpose and effect of excluding cities having more than 200,000 inhabitants from the provisions of the Act 136 of 1898, was to exclude the city of New Orleans. It has been held consistently by this court that the expression in a statute "the parish of Orleans excepted," which restricts the application of many laws to that part of the state outside of the city of New Orleans, does not make the laws local or special laws, as contradistinguished from general laws. See Blanchard v. Abraham, 115 La. 989, 40 South. 379, and Thomas v. Board of School Directors, 136 La. 499, 67 South. 345.

[5] The provision in the Act 136 of 1898 that it shall not apply to existing corporations, unless they elect to come under the provisions of the act, does not render the statute a special law. On the contrary, that provision itself is general in its effect, allowing every municipality in the state (the city of New Orleans excepted) the privilege of abandoning its special charter and adopting the general law. It is now too well settled to admit of argument that a statute that is general in its terms is not to be regarded as a local or special law, as contradistinguished from a general law, merely because the conditions under which the law may operate or have effect do not prevail in every locality in the state. See State v. Donato, 127 La. 393, 53 South. 662; City of Shreveport v. Nejin, 140 La. 785, 73 South. 996; State v. Nejin, 140 La. 793, 74 South. 103.

If the doctrine of the decisions last cited were not correct, the Act 10 of 1896, "to empower cities and towns (the city of New Orleans excepted), having a population exceeding ten thousand, to pave, macadamize or otherwise improve streets and alleys," etc., and the Act 241 of 1912, which embraces also "incorporated parish seats," and in fact all of the statutes that apply only to corporations of a specified class or size, would be special or local laws. In fact, there would be stronger reason for declaring the Act 241 of 1912 a special law than there is for declaring the Act 136 of 1898 a special law. For the act of 1912 applies only to incorporated parish seats and to cities and towns (the city of New Orleans excepted) having more than 10,000 inhabitants. And the number of incorporated parish seats, added to

the number of cities having more than 10,000 inhabitants, is not near as great as the number of smaller cities and towns (that are not parish seats) in this state.

This court, however, has already expressed the opinion that the Act 136 of 1898 is not a special law. In the case of the City of Lake Charles v. Roy et al., 115 La. 939, 40 South. 362, it was contended that the Act 136 of 1898 was, in that respect, violative of article 48 of the Constitution, and this court replied:

"The proposition that the general assembly may pass a special law amending the charter of a certain city or town [meaning any municipal corporation having a population not less than 2,500 inhabitants] does not involve the negation of the power to enact *general* laws affecting the charters of all municipal corporations within the limits of the state."

The Act 241 of 1912 was not in conflict or inconsistent with the Act 131 of 1904 (amending and re-enacting section 34 of Act 136 of 1898), except as to incorporated parish seats and cities having a population exceeding 10,000. As to them, of course, the act of 1904 was superseded by the act of 1912; but as to all other towns and cities functioning under the Act 136 of 1898 the statute of 1904 remained in force.

It is said by counsel for appellant that Act 241 of 1912 amends and re-enacts Act 10 of 1896. It must be observed, however, that the text of the Act 241 of 1912 does not amend or re-enact the Act 10 of 1896. The text of the act of 1912 is original, independent legislation. It is true, the title of the act of 1912 describes it as an act to amend and re-enact the act of 1896; but the act of 1896 is not mentioned or referred to in the text of the act of 1912.

In the case of Roth v. Town of Thibodaux, 137 La. 210, 68 South. 412, it was held that the Act 241 of 1912 was valid, not as an amendment or re-enactment of the Act 10 of 1896, but as original, independent legislation.

It was held that the object of the law of 1912 was expressed in its title, notwithstanding the title described the act as an act to amend and re-enact the act of 1896. The ruling in that respect was only an affirmance of the opinion expressed in the case of Murphy et al. v. Police Jury of St. Mary Parish, 118 La. 401, 42 South. 979, which was affirmed in City of Shreveport v. Nejin, 140 La. 785, 73 South. 996.

In Roth v. Town of Thibodaux, supra, we held that the town of Thibodaux, which, like the city of Opelousas, is a parish seat, was governed, in the matter of paving its streets, not by the Act 131 of 1904 (amending and re-enacting section 34 of Act 136 of 1898), but by the Act 241 of 1912, not as an amendment and re-enactment of the Act 10 of 1896, but as an original, independent statute.

The decree heretofore rendered herein is now reinstated and made final.

See dissenting opinion of MONROE, C. J., 84 South. 436.