76 So.2d 722

**LOUISIANA BOARD OF PHARMACY**

**v.**

**Lloyd T. SMITH on Writs to Review Judgment of Court of Appeal, First Circuit.**

**No. 41417.**

Nov. 8, 1954.

Rehearing Denied Dec. 13, 1954.

Kenneth Boagni, A. Veazie Pavy, Opelousas, for relator.

Henican, James & Cleveland, New Orleans, Dubuisson & Dubuisson, Edward Dubuisson, Opelousas, Murray F. Cleveland, New Orleans, for respondent.

LE BLANC, Justice.

Writs were granted in this case because an important question of public interest was involved and also because of the fact that relator complained so earnestly that he had been unjustly discriminated against by the officials of a public board, the Louisiana Board of Pharmacy, and by the action of the District Court and the Court of Appeal, 65 So.2d 654, in upholding the Board's action.

From the facts adduced for the record it appears that the relator, Lloyd T. Smith, has been engaged in the practice of pharmacy and in the business of operating a drug store in the city of Opelousas since the year 1942. During that year he applied to the Louisiana Board of Pharmacy for a permit to conduct his business and a license to practice the profession of a pharmacist. His request was not granted but he continued to operate his drug store and to fill and compound prescriptions without any action ever being taken against him until the year 1949. It does appear however that on visits made to his place of business by inspectors for the Board, it was observed that he did not have a Louisiana license and permit as required by the Pharmacy Law of the State and neither did he have a Federal license or permit to keep and dispense narcotics and narcotic preparations.

Apparently the matter of his lack of required qualifications came to a focus in November 1948 when relator personally appeared before the Board at a meeting held at the home of the Secretary-Treasurer in Ferriday, Louisiana. Relator had been throughout the time from 1942 basing his claim for a Louisiana license on the fact that he was a graduate of a School of Pharmacy in the Commonwealth of Massachusetts and also held a certificate from the Board of that Commonwealth. He claimed

that the Louisiana Board should grant him his license and permit on the basis of the reciprocity that existed between this state and that Commonwealth.

At the meeting in Ferriday relator was asked to state his case before the Board which he did. It was then reviewed, the evidence was discussed and weighed and the Board having found that the Massachusetts school from which relator had graduated was not an accredited school, advised him to either employ a registered pharmacist of the State of Louisiana or go to school and qualify so that he could take the examination in this State. Afterwards relator submitted to the Board his application for a retail pharmacy permit with the required fee. He did not record a Louisiana pharmacist on the application however and the application and fee were returned to him. On March 9, 1949 the Board, through its Secretary, addressed a communication to relator in which he was advised that an inspection of his store on January 29, 1949, showed that he did not have a Louisiana registered pharmacist on duty and that this was in violation of the Pharmacy Law, Act 469 of 1948, LSA–R.S. 37:1171 et seq. It was also recalled that at the meeting he attended in Ferriday he was advised that he would be compelled to have a Louisiana registered pharmacist on duty at all times, as required under the law and he was specifically asked to name the Louisiana pharmacist he actually had on duty. To this communication the relator replied by letter dated March 21, 1949 stating that he had no intention of employing a Louisiana pharmacist or any other registered pharmacist in the near future as he was himself a registered pharmacist. Then he adds that any further correspondence would be a waste of time on the part of both himself and the Board and suggests that the Board take the matter up to the proper authorities "and eventually to the Courts."

The Board then submitted the matter to the Attorney General of the State asking for definite advice as to its right to proceed with the enforcement of the law against the relator and upon being informed that under the facts presented he could be enjoined under Act 469 of 1948 from (1) operating a drug store without a permit and (2) practicing pharmacy without a Louisiana License, it later on, on February 6, 1950, instituted this injunction proceeding.

After setting out in its petition, in lesser detail, the facts herein outlined and that relator was acting, in violation of the law and, more particularly, the provisions of Subsection 9 of Section 1 and those of Subsection 7, Section 1 of Act 469 of 1948, and further alleging that it (the Board) and the people of the State of Louisiana are suffering irreparable injury as a result of his acts, the Board asked the Court to issue a rule nisi calling upon the relator to show cause why a preliminary injunction should not issue against him. The Court issued the rule to show cause whereupon relator filed his answer in which he maintained his

right to practice pharmacy in Louisiana on the strength of the certificate he held from the School of Pharmacy and the Pharmacy Board in Massachusetts, under the reciprocity features of the laws of both states. He avers that the Louisiana Board was at all times vested with discretion to register him but that at no time did it conduct a hearing or an investigation as to his qualifications; that its action toward him has been capricious, captious and arbitrary and for that reason it is not entitled to the extraordinary relief it is seeking.

He also avers that the Board was advised by the Attorney General on May 26, 1942 that the standards of Massachusetts were sufficiently high for the Board of this State to grant reciprocation to one who had successfully passed the examination of that State and hence he was entitled to recognition of his Massachusetts certificate which he timely and regularly received, under the Constitutional provision that "full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." Art. 4, § 1.

In the alternative relator pleaded that Act 469 of 1948 was unconstitutional in the following respects: (1) That it violates Section 16, Article 3 of the Constitution (presumably the State Constitution) as the Act is broader than its title; (2) That it violates Art. 1, Sec. 2, State Constitution as it deprives him of his liberty and property without due process of law; and (3) That it is violative of the 14th Amendment to the Constitution of the United States because it denies him and all persons equal protection of the law.

After trial in the District Court there was judgment in favor of the plaintiff Board and the injunction issued. An appeal was taken to this Court and the case was transferred to the Court of Appeal, First Circuit, which affirmed the judgment of the District Court. The matter is now before us for review on the writs that were granted.

The trial judge in his reasons for judgment stated that the sole issue in the case was whether or not the Louisiana Board of Pharmacy abused its discretion in refusing to register the relator in Louisiana under the reciprocity provisions in our law, he being registered in Massachusetts, a reciprocating state. He concluded that the Board had not abused its discretion and pointed out excellent reasons, in analyzing the various provisions of the law, Act 469 of 1948, and in applying those provisions to the facts of the case, why there was no abuse of discretion. The Court of Appeal in an equally well-considered opinion went a bit further and disposed of the issues of constitutionality of Act 469 of 1948 which had been raised in the relator's answer, in the alternative.

On the matter of the alleged abuse of discretion by the Pharmacy Board, we seriously doubt, after reading the provisions contained in section 2 of the Act whether the Board was vested with any discretion

whatsoever in this case. As pointed out in the opinion of the Court of Appeal, the present law on the subject, Act 469 of 1948 is a development of the original law regulating the practice of pharmacy in this State, Act 66 of 1888. The Act of 1948 has now become LSA–R.S. 37:1171–1205. The Act of 1888 was amended from time to time in order, no doubt, to make the provisions respecting the qualifications for registration more rigid and to raise the standards of a very important profession whose members are charged with grave responsibilities in compounding and dispensing prescriptions of medicines, all of which may seriously affect the health and the lives of the people in a given community.

One section of the Act, LSA–R.S. 37:-1179, deals with the qualifications and requirements of applicants in general and provides as follows:

"Every applicant for examination and registration as a pharmacist must be at least twenty-one years of age, of good moral character and temperate habits, and a graduate of an approved college of pharmacy."

LSA–R.S. 37:1181 deals with the provisions relating to registration by reciprocity. It reads in part as follows:

"The board may register as a pharmacist, without examination, any person who is duly registered by examination in another state, if he produces evidence satisfactory to the board of

having had the required secondary and professional education and training, and is possessed of good character and morals, as demanded of applicants for registration under the provisions of R.S. 37:1179.

"Persons of good character and morals who were registered as pharmacists by examination in another state before July 28, 1948, shall satisfy only the requirements which existed in this state at the time they became registered in such other state, if the state in which such person is registered does, under like conditions, grant reciprocal registration without examination, to pharmacists duly registered by examination in this state."

In as much as it seems to be conceded that relator became a registered pharmacist under the laws of the Commonwealth of Massachusetts in the year 1942 and that there is reciprocity between that Commonwealth and the State of Louisiana, it becomes necessary, in order to pass on his right to registration in Louisiana, without examination, to ascertain whether or not, by his registration in Massachusetts, he satisfied the requirements of the prevailing law of Louisiana at that time.

The pertinent provisions of the law that was in effect in 1942 are to be found in the amending act to Section 2 of Act 66 of 1888 which was Act 297 of 1940. The first part of the section reads exactly the same

as the herein quoted provision of LSA–R.S. 37:1179 except in stating that every applicant for registration had to be a graduate of an "approved college of pharmacy", it read that every applicant had to be a "graduate of an accredited school or college of pharmacy or department of pharmacy of a university recognized by the Board of Pharmacy, * * *." The provisions relating to registration by reciprocity read as follows:

"Provided further, that the Board of Pharmacy may in its discretion register as a pharmacist, without examination, any person who is duly registered by examination in some other state, provided that the said person shall produce evidence satisfactory to the Board of having had the required secondary and professional education and training, and is possessed of good character and morals, as demanded of applicants for registration under the provisions of the pharmacy act of this state; * * *."

■ It would seem therefore that the Board is not vested with discretion in the matter unless the applicant for registration is able to show that he has complied with the requirements set out in the law. In the first place, under the provision regarding applicants generally speaking, the one applying had to show that he was a graduate of "an accredited school or college of pharmacy" that was recognized by the Board of Pharmacy of this State. Surely that provision could not be applied with lesser force to an applicant for registration under the reciprocity feature of the act. In the second place when we examine the provisions of the act concerning registration by reciprocity, that is when we find the mention of the use of discretion by the Board. However, before it can exercise such discretion, the burden is on the applicant "to produce satisfactory evidence" before it, of having had the required secondary and professional education and training. If he cannot produce such evidence there is no occasion for the exercise of any discretion at all.

The question then arises: Did the relator produce such evidence? Undoubtedly he did not. All that he was able to produce was a certificate of date February 24, 1942, showing that he had completed a course in "the Monteith Boston School of Pharmacy" which, he admits, is a correspondence school not shown to be an accredited college of pharmacy or a department of pharmacy of a university recognized by the Board of Pharmacy of this state.

The prevailing law in 1942 as well as the present law, LSA–R.S. 37:1184, 1185 are both practically the same in respect to obtaining a permit to operate a pharmacy. They both define a pharmacy as being a place where, among other things that are done, prescriptions are dispensed and it is required that the prescription department

be at all times under the personal and immediate supervision of a registered pharmacist. The Board was within its right therefore in refusing to give the relator a permit unless he consented to have a Louisiana registered pharmacist in charge of his prescription department.

Relator's contention that his Massachusetts' license is entitled to recognition in Louisiana by virtue of the full faith and credit clause of the United States Constitution, Art. IV, Sec. 1, was correctly held by the Court of Appeal to be without merit. The constitutional provision is that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." Clearly that specific language does not warrant extending the provision so as to make it apply to the action of a State Board clothed with the duty and authority of granting licenses to practice a profession such as that of pharmacy.

The issue of unconstitutionality of the Act is correctly disposed of by the Court of Appeal and we take the liberty of quoting and adopting as our own, the reasons given by it in rejecting relator's contentions. They are as follows: [65 So.2d 659]

"The attacks based on the due process and equal protection clauses have not been urged here and can be considered abandoned. The other conten-

tion is that the act is broader than its title in that the act by indirection amends the injunction statute, Act 29 of 1924, Sec. 5, LSA–R.S. 13:4070, while the title of the act makes no reference to an intent to effect such amendment. The injunction statute grants the court discretion in allowing or disallowing a suspensive appeal from the grant of an injunction; the pharmacy act provides that where an injunction is granted to enjoin violations of the act the injunction shall not be released upon bond. This attack is answered we believe by the Supreme Court in Succession of Pipitone, 204 La. 391, 15 So.2d 801, 804, where it is said that the Constitution, Art. III, Sec. 16, 'does not require that every change which an act of the Legislature may effect in other laws on the subject shall be expressed in detail in the title of the new act. It requires merely that the title of the act shall be appropriate to the subject dealt with in the act itself, and shall not be misleading as to any purpose intended to be accomplished by the act'. See also City of New Orleans v. Board of Supervisors, 216 La. 116, 43 So.2d 237, 243, where that rule is quoted and followed. The title to the pharmacy act is voluminous and in considerable detail. Part of it states that it is an act ' * * * to provide for enforcement of this Act by civil process by in-

junctions; to prevent the practice of pharmacy by unauthorized persons * * *.' The title we believe meets the requirements of the Constitution."

█ In brief and in argument relator presents a further issue based on the doctrine of contemporaneous construction. He contends that the doctrine should be applied because the Board of Pharmacy impliedly sanctioned his practice of the profession for such a long period of time before taking the present action against him. It is a fact that no action was taken despite the fact that the Board was aware of his lack of the required qualifications but the testimony is to the effect that his request for a permit to operate a pharmacy was never granted for the very reason that he was not himself a Louisiana registered pharmacist and he refused to employ one to supervise his prescription department. If, impliedly, the Board ever construed the act, it certainly was not in his favor but rather against the contentions on which he based his right to be registered and to hold a permit to conduct his business.

For the reasons stated it is ordered that the alternative writs herein granted be, and they are hereby recalled and set aside and it is further ordered that the judgment and decree of the Court of Appeal be now made final.