AYRES, Judge.
In this action plaintiff sought a writ of mandamus to compel the Louisiana State Board of Optometry Examiners to permit him to take an examination for a license, or certificate, authorizing him to practice optometry in the State of Louisiana, and, in the alternative, to issue him a license with a waiver of examination. From a judgment rejecting plaintiff’s demands he appealed to the Supreme Court and the appeal was transferred to this court. La., 95 So.2d 492.
This appeal presents four questions for solution: First, whether plaintiff is a graduate of a college of optometry approved by the Louisiana State Board of Optometry Examiners as prescribed by LSA-R.S. 37 :- 1049 et seq.; second, in the event plaintiff is not held entitled to take the examination, whether he has the right to require the Board to issue him a license to practice optometry by waiver of the requirement for examination; third, whether that part of the statute encompassed in LSA-R.S. 37 :- 1049, which requires all applicants to be graduates of a school or college of optometry appproved by the Louisiana State Board of Optometry Examiners, is constitutional; and, fourth, whether the Louisiana State Board of Optometry Examiners had discriminated against plaintiff.
Plaintiff enrolled as a student in the Monroe College of Optometry in Chicago, Illinois, September 26, 1946, and graduated March 26, 1948, or after eighteen months of college work, following which he took an examination before the Illinois State Board of Optometry and was granted a license to practice optometry in that State. On returning to Louisiana plaintiff made application to the Louisiana State Board of Optometry Examiners to take an examination, through which he might be authorized and licensed to practice his profession in this State. Plaintiff’s application was rejected and he was refused permission to take an examination on the ground that he was not a graduate of a school or college of optometry approved by the Board. The questions presented for determination will be-considered in the order enumerated.
The evidence in the record conclusively establishes that at the time plaintiff enrolled in the Monroe College of Optometry the college was not only not on defendant’s approved list and did not have its approval, but that the college and its course of study had been, in fact, disapproved by the Board. The college, however, had previously been on the Board’s approved list but by action of the Board in 1942 such approval had been withdrawn and neither the college nor its course of study met the Board’s approval thereafter. Appropriate notices were given to the college and, through it, to all persons concerned, of the Board’s action in removing the college from its approved list. It was particularly stated in the notice given that the Board did not approve the course of only two years study pursued at the college and would not permit a graduate of such a course to take the *405 examination in Louisiana. One of the qualifications and requirements of applicants for license to practice optometry in Louisiana is that such applicant must he graduated from a school or college of optometry approved by the Board. LSA-R.S. 37:1049. Therefore, as the college from which plaintiff graduated was not approved by the Louisiana State Board of Optometry Examiners, the Board was without statutory authority to permit plaintiff to take the examination.
The second of the propositions submitted for determination is fully answered by the provisions of LSA-R.S. 37:1054 of the statute, which provides that:
“The board may waive the examination provided in R.S. 37:1051 if the applicant presents to the board a satisfactory certificate of registration from a board of optometry examiners of another state, and if the standard of requirements adopted and enforced by such board is equal to that provided in this Chapter(Emphasis supplied.)
 In the first place, the authority conferred by this section is not mandatory upon the Board but is only discretionary, and, in the second place, the record not only fails to establish that the standard of requirements adopted and enforced by the Illinois State Board of Optometry is equal to that provided for in Louisiana, but that such requirements fail to meet the requirements enforced in this State. In Illinois plaintiff was permitted to take an examination only after attending an optometry college for a period of eighteen months, whereas here the Board required as a condition precedent to its recognition and placement on its approved list that a college of optometry should have a four-year course. That requirement has since been increased to five years. No contention is made that such requirement for an accredited approved college training course is arbitrary and unreasonable. Plaintiff has shown nothing more than that he is a graduate of a school of optometry after pursuing a course of eighteen months study. It therefore follows that the license of registration obtained by plaintiff in the State of Illinois, based upon his graduation from such college, is not of equal standard to that required by the regulations of the optometry board of this State, and, therefore, the Board is without authority to waive the required examination.
In Louisiana Board of Pharmacy Examiners v. Smith, 226 La. 537, 76 So.2d 722, it was held that under a statute providing that the State Board of Pharmacy may, in its discretion, grant reciprocal registration to registered pharmacists of other states who show evidence of having had the education and training required by the laws of this State at the time of registration in such other state, the Board was without legal authority to grant reciprocal registration to a pharmacist in the absence of evidence that ■the school from which he graduated is, or was, an accredited school as required by the laws in force in this State at the time of his registration in such other state. On this point all the applicant was able to produce was a certificate showing that he had completed a course in pharmacy in a correspondence school not shown to be an accredited college pharmacy or a Department of Pharmacy of a university recognized by the Board of Pharmacy of Louisiana. For the same reason the Board in the instant case properly refused to grant applicant a license to engage in the practice of optometry in this state by waiver of the required examination.
Plaintiff next contends that Section 1049 of the statute is unconstitutional, null and void as constituting an unlawful delegation of power to the Louisiana State Board of Optometry Examiners and as depriving him of his property without due process of law and of the equal protection of the law in violation of the Fourteenth Amendment to the Constitution of the United States and of Article I, Sections 1, 2 and 6 of the Constitution of Louisiana, LSA. The authority for the regulation of *406 the practice of medicine in all its departments and for the protection of the people from unqualified practitioners thereof is conferred upon the Legislature by Article VI, Section 12 of the Constitution of Louisiana. Similar objections made to the Medical Practice Act were overruled by the Supreme Court in Louisiana State Board of Medical Examiners v. Fife, 162 La. 681, 111 So. 58, 54 A.L.R. 594, and the statute regulating such practice was held constitutional. The rules therein pronounced have been uniformly followed. For instance, in Louisiana State Board of Medical Examiners v. Beatty, 220 La. 1, 55 So.2d 761, 763, the court held there could be no denial of the fact that the regulation of the practice of medicine was within the police power of tíre State. The court also stated that the practice of optometry falls within the Medical Practice Act and that optometrists would be amenable to its provisions but for the exemption which the Legislature has seen fit to grant them when they are legally licensed to practice within their particular field. With reference to the objections raised as to the validity of the statute, such as were the objections made here, the court continued by saying:
“Likewise without substance is the claim that the Act confers arbitrary powers on the Medical Board and thus denies equal protection. The alleged arbitrary powers of the Board are said to be contained in Section 2 of the Act-declaring that, before any person may enter upon the practice of medicine, he shall present to one of the Boards of Medical Examiners ‘a diploma from a college in good standing, of any sect teaching medicine or the healing art, and shall stand a satisfactory examination * * * It is asserted that, since the Medical Board is given the right of determining what is or what is not a 'college in good standing’, the statute vests in it arbitrary power which may be, and actually has been, exercised in the interest of a favored few.
“The identical contention of appellants was rejected by the Supreme Court of the United States in Graves v. State of Minnesota, 272 U.S. 425, 47 S.Ct. 122, 71 L.Ed. 331. The provision that the applicant present a diploma from a college in good standing does not clothe the Board with an arbitrary power but only with the right to exercise discretion; what is or what is not a college in good standing is a matter for determination by the Board after investigation but, should it refuse an examination to an applicant presenting a diploma from a reputable medical school, its action would then be regarded as arbitrary and subject to coercion by mandamus. The possibility of arbitrary action, where discretion is vested in an administrative body, does not render the statute vulnerable to the charge that it denies an equal protection of the laws, 12 Am.Jur. ‘Constitutional Law’ Sec. 494, Engel v. O’Malley, 219 U.S. 128, 31 S.Ct. 190, 55 L.Ed. 128.
******
“Finally, counsel assert that the Act takes from appellants their constitutional right to practice their profession without due process of law. In making this contention, counsel admit that the State has the right to regulate the practice of medicine but they say that the regulations imposed by the Act and its administrators are arbitrary and unreasonable and, therefore, strip them of their property right to practice chiropractic.
“That this statute does not violate the due process clause of the state and federal Constitutions has already been determined by this Court and the Supreme Court of the United States in the Fife case [162 La. 681, 111 So. 58, 54 A.L.R. 594; Id., 274 U.S. 720, 47 S.Ct. 590, 71 L.Ed. 1324], In truth, the argument now made on this score is not in *407 reality grounded on the due process clause but is a rehash of the same contention made under the asserted denial of equal protection of the laws.”
In State v. Rones, 223 La. 839, 67 So.2d 99, it was held that the practice of optometry, which, by its very nature, is closely related to the public health and welfare, is subject to governmental regulation by the Legislature under its police power.
Similar rulings were made in Semler v. Oregon State Board of Dental Examiners, 294 U.S. 608, 55 S.Ct. 570, 571, 79 L.Ed. 1086, wherein it was stated:
‘‘The question is whether the challenged restrictions amount to an arbitrary interference with liberty and property and thus violate the requirement of due process of law. That the state may regulate the practice of dentistry, prescribing the qualifications that are reasonably necessary, and to that end may require licenses and establish supervision by an administrative board, is not open to dispute. Douglas v. Noble, 261 U.S. 165, 43 S.Ct. 303, 67 L.Ed. 590; Graves v. State of Minnesota, 272 U.S. 425, 427, 47 S.Ct. 122, 71 L.Ed. 331, [334], The State may thus afford protection against ignorance, incapacity and imposition.”
The trend in this line of jurisprudence was emphasized in Williamson v. Lee Optical of Oklahoma, 348 U.S. 483, 75 S.Ct. 461, 464, 99 L.Ed. 563, wherein the United States Supreme Court stated:
“The day is gone when this Court uses the Due Process Clause of the Fourteenth Amendment to strike down state laws, regulatory of business and industrial conditions, because they may be unwise, improvident, or out of harmony with a particular school of thought.”
It was early held by the Supreme Court of Louisana in Allopathic State Board of Medical Examiners v. Fowler, 50 La.Ann. 1358, 24 So. 809, that:
“Whenever the pursuit of any particular occupation or profession requires for the protection of the lives or health of the general public, skill, knowledge and other personal attributes or characteristics in the person pursuing it, the general assembly has the power and authority to have recourse to proper measures to ensure that none but persons possessing these qualifications should pursue it. A statute to that effect is not open to attack as depriving citizens of their right to earn a living. The right to practice medicine is not an absolute natural right, but a right or privilege to be exercised under conditions and limitations regulated by legislative authority.
“The general assembly, having the authority to require as a condition precedent to the right or privilege of any one to practice medicine in Louisiana, that he should be subjected before doing so to a prior examination as to his qualifications, and found and declared worthy and qualified, it has the right to select the particular agency to whom should be delegated that duty. Courts can not control that selection. * *
“The recognition by the constituted authorities of another state that a person was properly qualified to practice medicine, and that the medical college whose diploma he presented as evidence of that fact was a medical college in good standing, does not carry with it a vested right in the party to practice medicine in Louisiana. Each state acts independently of the other in this matter.”
The conclusion is therefore inescapable that the statute whose constitutionality is attacked by plaintiff meets the tests of the objections and is constitutional, legal and valid.
Lastly, plaintiff contends that the Board has discriminated against him. This *408 claim is predicated upon the fact that in prior instances the Board had granted licenses to two other graduates of the Monroe College of Optometry while denying to him the same right. The record clearly disproves the contention of ' discrimination. The college prior to 1942 was on the approved list of the Louisiana State Board of Optometry Examiners. It was during that period that the two were permitted to take the examination and were licensed to practice optometry in Louisiana. It is therefore clear that, since the college had not been disapproved when those two graduated, they were authorized to take the examination prescribed by the statute. However, when plaintiff enrolled at the college it was not on the approved list of the Board. Neither was it on the approved list when he graduated or when he made application to take the examination in Louisiana.
It is a matter of common knowledge that in all professions for many years there has been a tendency to raise the standards by increasing entrance requirements and expanding courses of study. Plaintiff’s dilemma stems from the fact that when he tendered his application for examination to practice optometry in Louisiana the requirements for admission to practice had been raised. Merely because others, at a prior time, under lesser requirements, were admitted to the profession is no reason why plaintiff and others similarly situated should now be relegated to the prior and lower standards for admission which have been discarded for higher admission requirements.
Neither does plaintiff have any cause for complaint that those licensed under prior requirements are granted a renewal license annually. That formality is no more that a ministerial act after the initial licenses were granted. Similar licenses are required in other professions, such as the legal and medical professions, and have no bearing upon the initial qualifications as prerequisite to the issuance of licenses to practice in those professions.
We find no error in the judgment appealed and, accordingly, it is affirmed at appellant’s cost.
Affirmed.