No. 1028. STASSEN FOR PRESIDENT CITIZENS COM-
MITTEE v. JORDAN, SECRETARY OF STATE OF CALIFORNIA.
(Petition for writ of certiorari to the Supreme Court of
California denied, *ante,* p. 914.)

MR. JUSTICE DOUGLAS, with whom THE CHIEF JUSTICE
and MR. JUSTICE GOLDBERG concur, dissenting.

I would have granted certiorari in this case as the
Journal entry for April 24, 1964, shows; and I file this
statement of reasons pursuant to the reservation made
at the time.

It is now settled, after a period of some uncertainty
(cf. *Newberry* v. *United States,* 256 U. S. 232, 250), that a
primary election for Representatives for the Congress is a
part of the election process guaranteed by Art. I, §§ 2
and 4 of the Constitution (*United States* v. *Classic,* 313
U. S. 299); and the same reasoning applies to primary
elections for Senators pursuant to the Seventeenth
Amendment. *Terry* v. *Adams,* 345 U. S. 461, 468; *Gray*
v. *Sanders,* 372 U. S. 368, 380.

We deal here not with the primary election for either
members of Congress or the Senate but with the nomi-
nating process for a primary election [1] in which conven-
tion delegates favorable to a particular presidential
candidate are chosen, the convention choice ultimately
to compete for President in an election under Article II

---

[1] The California Elections Code (1961) provides that nomination
papers shall be left with the county clerk of the county in which they
are circulated at least 60 days prior to the presidential primary.
§ 6081. The nomination papers in the present case are required to be
signed by not less than one-half of one percent and not more than two
percent of the vote for the Republican Governor at the last general
election. § 6080 (a), § 6082. And it is provided in § 6087 that a
"verified nomination paper is prima facie evidence that the signa-
tures are genuine and that the persons signing it are voters, until
it is otherwise proved by comparison of the signatures with the
affidavits of registration in the office of the county clerk."

of the Constitution—a procedure that Congress has regulated in detail. See 3 U. S. C. § 1 *et seq.*

The Court in the *Classic* case said:

> "That the free choice by the people of representatives in Congress, subject only to the restrictions to be found in §§ 2 and 4 of Article I and elsewhere in the Constitution, was one of the great purposes of our constitutional scheme of government cannot be doubted. We cannot regard it as any the less the constitutional purpose, or its words as any the less guarantying the integrity of that choice, when a state, exercising its privilege in the absence of Congressional action, changes the mode of choice from a single step, a general election, to two, of which the first is the choice at a primary of those candidates from whom, as a second step, the representative in Congress is to be chosen at the election." 313 U. S., at 316–317.

The "mode of choice" (*id.*, at 316) in California for presidential candidates is first, the nominating petition, second, the primary, third, the convention, and fourth, the general election. The fact that the "mode of choice" is enlarged to four stages is irrelevant to the constitutional purpose to protect "the free choice" of the people (*ibid.*) in federal elections.

California, zealous to protect that right, creates the presumption that signatures on a petition are signatures of bona fide electors. Elections Code § 6087.[2]

In this case, however, the presumption is defeated, not because the signatories to the nominating petitions are found to be unqualified but for reasons that relate solely to the administrative convenience of the county clerks. They certify as qualified voters only those that their office has indexed; and concededly the indices are not up

---

[2] Note 1, *supra.*

to date. A voter recently moving to a new district and registering in time nevertheless loses his franchise—not because of any disqualification or irregularity, not because of his failure to do something required, and not because of his commission of a wrongful act. He has done all in his power to qualify as a voter; but his vote is not counted in the nominating stage of the electoral process merely on account of administrative congestion. This to me is at least arguably an impermissible state denial of a federal right; the question is substantial;[3] and I regret it was not argued and decided on the merits.

---

[3] No other infirmity is shown on the papers before us; and the Supreme Court of California in denying relief wrote no opinion.