177 So.2d 576

Rodney BURAS, Individually and on Behalf of a Class Applying for Declaratory Judgment, Consolidated with James E. Comiskey, Individually and on Behalf of a Class Applying for a Declaratory Judgment,

v.

**ORLEANS PARISH DEMOCRATIC EXECUTIVE COMMITTEE et al.**

No. 47873.

July 26, 1965.

Reasons for Judgment July 28, 1965.

John D. Tamberella, A. J. Fortier, Jr., New Orleans, Alvin J. Liska, City Atty., Alden W. Muller, Beuker F. Amann, Ernest L. Salatich, Asst. City Attys., for defendants-appellants.

Forrest L. Bethay, Garvey & Salvaggio, by Richard J. Garvey, New Orleans, for plaintiffs-appellees.

Martin L. C. Feldman, of Weinstein, Bronfin & Heller, New Orleans, for defendant-appellee.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Henry J. Roberts, Jr., Rudolph O. Vorbusch, Asst. Attys. Gen., Thomas M. Brahney, III, Sp. Counsel to Atty. Gen., for Attorney General.

Montgomery, Barnett, Brown & Read, Wood Brown, New Orleans, for amicus curiae.

HAMLIN, Justice.

Giving particular consideration to the exigencies of this matter as relate to time, we herewith hand down our decision, the reasons for which will follow in due course.

The judgments appealed from are annulled and set aside, and the suits of plaintiffs dismissed at their costs.

### Reasons for Judgment

In these consolidated cases, defendants, City of New Orleans, Orleans Parish Democratic Executive Committee, and Henry J. Engler, Chairman of the Orleans Parish Democratic Executive Committee, appeal directly to this Court (Art. VII, Sec. 10, La.Const. of 1921) from a judgment of the trial court in favor of plaintiffs decreeing Act 153 of 1965 of the Louisiana Legislature to be unconstitutional and of no legal effect and ordering and decreeing that a permanent injunction issue enjoining and restraining the Orleans Parish Democratic Executive Committee and the Orleans Parish Republican Executive Committee from taking any action pursuant to said Act 153 of 1965.

On June 25, 1965, Rodney Buras, individually and on behalf of a class,[1] instituted the present suit for a declaratory judgment. Plaintiff alleged that Act 153

---

1. Article 591 of the Louisiana Code of Civil Procedure provides that, "A class action may be instituted when the persons constituting the class are so numerous as to make it impracticable for all of them to join or be joined as parties, and the character of the right sought to be enforced for or against the members of the class is:

of 1965 is unconstitutional in that it violates the spirit and intention of the Home Rule Charter of the City of New Orleans in that it imposes upon the citizens of New Orleans changes in the voting laws without said citizens having an opportunity to express their opinion. He prayed that a preliminary injunction issue enjoining and restraining the Orleans Parish Democratic Executive Committee from meeting to call a primary election in accordance with Act 153 of 1965. After alleging that he was an affiliated member of the Democratic Party, a resident of the City of New Orleans, State of Louisiana, and a registered voter of the Parish of Orleans, plaintiff stated that he desired to and would be a candidate for the office of Civil Sheriff for the Parish of Orleans in the forthcoming Democratic primary previously scheduled for January, 1966 but changed to November, 1965 by Act No. 153 of 1965 of the Louisiana Legislature. Plaintiff further stated that he anticipated the expenditure of approximately $25,000.00 in campaign expenses. By amended petition, plaintiff named the Orleans Parish Republican Executive Committee as a party defendant; he reiterated the allegations of his original petition and urged the same demands against the additional defendant; he prayed for service of citation on both

"(1) Common to all members of the class; or
"(2) Secondary, in the sense that the owner of a primary right refuses to en-

Committees and on the City of New Orleans through its Mayor.

On June 28, 1965, James E. Comiskey, individually and on behalf of a class, instituted suit urging the same demands as those contended for by plaintiff Rodney Buras. Named as defendants were the City of New Orleans through its Mayor, the Orleans Parish Democratic Executive Committee, and Henry J. Engler, Chairman of the Orleans Parish Democratic Executive Committee. Plaintiff, Tax Assessor for the First District of the City of New Orleans, alleged that he desired to and would be a candidate for re-election to the office he held and that the primary was previously scheduled for January, 1966, in accordance with Title 18, Section 304 and Section 4–201 of the Home Rule Charter for the City of New Orleans, but was changed to November, 1965 by Act 153 of 1965.

Plaintiff James E. Comiskey alleged that Act 153 of 1965 is unconstitutional for the reasons that it violates the spirit and intention of the Home Rule Charter of the City of New Orleans, authorized by Section 22 of Article XIV of the Louisiana Constitution of 1921; it imposes upon him and the citizens of the City of New Orleans changes in the voting laws without an opportunity of expression of opinion; it

force it, and a member of the class thereby becomes entitled to enforce the right."

violates Article IV, Section 4, of the Louisiana Constitution of 1921, in that Act 153 of 1965 is a local or special law; and, it violates Article III, Section 16, of the Louisiana Constitution of 1921, in that the statute has more than one object and the title of the statute is not indicative of the object.

. By supplemental petition, the Orleans Parish Republican Executive Committee was also made a party defendant.

Exceptions of no right and no cause of action were filed on behalf of certain parties defendant and thereafter referred to the merits of the case; they were subsequently overruled.

All parties defendant answered. The Orleans Parish Republican Executive Committee averred that Act 153 of 1965 disfranchised all voters who had changed their political affiliations in registration within the month of June, 1965, and is therefore unconstitutional. The Attorney General was cited and responded to plaintiffs' petitions under Article 1880 of the Louisiana Code of Civil Procedure.

The two suits were consolidated for trial, and after trial on the merits[2] the court rendered the judgment set forth supra. In scholarly reasons for judgment, it concluded:

2. In its reasons for judgment, the trial court stated:—"On the morning of · the trial of the case it was stipulated by the attorneys for all parties to the suit that the case would be tried on the merits as

"A careful consideration of the jurisprudence, the wording of the Act and the constitutional provisions, leads the Court to the inescapable conclusion that Act 153 of 1965 is a local or special law for the holding and conducting of elections and that it therefore violates the provisions of Article IV, Sections 4 and 5 of the Constitution of Louisiana. It is therefore null and void and without force and effect."

Appellants contend that the district court was in error in holding Act 153 of 1965 unconstitutional as a local or special law prohibited by Article IV, Section 4, of the Louisiana Constitution of 1921.

A study of the history of Act 153 of 1965 is pertinent to a solution of this case.

Act 46 of 1940 was an act "To provide for calling, holding, conducting and regulating primary elections by political parties and to define the term political party; * * *" Section 25 provided that "The respective committees of the political parties authorized to order primary elections for the purpose of nominating municipal or ward officers in any municipality, coming under the provisions of this Act, when the election of such officers falls on a date different from that at which a general

well as on the rule for preliminary injunction, so that the judgment to be rendered herein will be a judgment on the rule for an injunction and a judgment on the merits.".

State election for State officers is held, or on a date different from that at which members of Congress are elected, shall meet one hundred and eleven (111) days prior to the date fixed for the holding of said elections and order a primary election to be held for the purpose of nominating candidates for such municipal and ward offices. The date fixed, by said committee, for holding such primary election shall be not less than sixty (60) and not more than seventy (70) days prior to the date fixed for the election of said officers."

Act 351 of 1946 amended a number of the sections of Act 46 of 1940; Section 2 amended Section 25 of the 1940 Act so as to provide that the committees should meet not less than one hundred and eleven days nor more than one hundred twenty-six days prior to the date fixed for the holding of the primary elections.

Chapter 2 of Book 14 of the Louisiana Revised Statutes, LSA–R.S. 18:281–484 of 1950, provides for "Primary Elections." LSA–R.S. 18:304 of 1950 (Source, Sec. 25 of Act 46 of 1940 and Sec. 2 of Act 351 of 1946) provided that the committees should meet at the same times as provided for by Act 46 of 1940. The heading of the section recited, "Municipal or ward officers; separate election; date of primary."

Act 630 of 1954 was an act "To amend and re-enact Section 304 of Title 18 of the Louisiana Revised Statutes of 1950 relative to meeting of Committee for the purpose of ordering primary election to nominate municipal or ward officers; and repealing all laws, or parts of laws, in conflict herewith." The amendment recited:

"The respective committees of the political parties authorized to order primary elections for the purpose of nominating municipal or ward officers in any municipality coming under the provisions of this Part, when the election of such officers falls on a date different from that on which a general state election for state officers is held or on a date different from that on which members of Congress are elected, shall meet not less than one hundred and eighteen days nor more than one hundred and thirty-three days prior to the date fixed for the holding of the elections and order a primary to be held for the purpose of nominating candidates for such municipal and ward officers. The date fixed by the committee for holding the primary shall be not less than sixty nor more than seventy days prior to the date fixed for the election of the officers."

Act 153 of 1965 was an act "To amend and re-enact Section 304 of Title 18 of the Louisiana Revised Statutes of 1950 so as to fix the dates of the first and second primary elections for the nomination of Parochial and Municipal Officers in the City of New Orleans, and to provide for the meeting of the respective political party

committees for the purpose of ordering such primary elections; and repealing all laws, or parts of laws, in conflict herewith." The body of the act recites:

"Be it enacted by the Legislature of Louisiana:

"Section 1. That Section 304 of Title 18 of the Louisiana Revised Statutes of 1950 is hereby amended and re-enacted so as to read as follows:

"Section 304. Municipal or Ward Officers other than New Orleans; date of primary; New Orleans Municipal and Parochial Officers; date of primary.

"A. Except in the City of New Orleans, the respective committees of the political parties authorized to order primary elections for the purpose of nominating municipal or ward officers in any municipalities coming under the provision of this part, when the election of such officers falls on a date different from that on which a general state election for state officers is held or on a date different from that on which members of Congress are elected, shall meet not less than one hundred and eighteen days nor more than one hundred and thirty-three days, prior to the date fixed for the holding of the election and order a primary to be held for the purpose of nominating candidates for such municipal and ward

officers. The date fixed by the committee for holding the primary shall be not less than sixty nor more than seventy days prior to the date fixed for the elections of the officers.

"B. Beginning in the year 1965, and every four years thereafter, the first primary election for nomination of Parochial and Municipal officers in the City of New Orleans shall be held on the first Saturday after the first Monday in November; and the second primary, when one is necessary, shall be held five weeks later. The respective political party committees shall meet to call such primary elections not more than seventy-six days, nor less than seventy days, prior to the date of the first primary election as herein set forth.

"Section 2. That all laws, or parts of laws, contrary to or in conflict herewith are hereby repealed."

Initially, we think it proper to discuss appellees' contention that Act 153 of 1965 is violative of Section 16 of Article III of the Louisiana Constitution of 1921; this section reads as follows:

"Every statute enacted by the Legislature shall embrace but one object, and shall have a title indicative of its object.

"The Legislature may, however, by means of a single statute, enact or re-

vise a system of laws of a general or public nature, such as the general statutes, or a codification of laws on the same general subject matter, or both. Such a statute shall be deemed to embrace but one object and its title need only refer to the general purpose and scope of the statute."

In State v. Clayton, 233 La. 972, 99 So.2d 312, we held that whenever a law or article or section of a code of laws or the revised statutes is amended, its title satisfies the requirements of the Constitution by merely stating that it is an act to amend and re-enact the particular law or section of the code of laws amended. See, State v. Mauvezin, 136 La. 746, 67 So. 816.

■ The title of the instant act specifically states that it is an act "To amend and re-enact Section 304 of Title 18 of the Louisiana Revised Statutes of 1950 * * *" This language satisfies constitutional requirements; Act 153 of 1965 is therefore not violative of Section 16 of Article III of the Louisiana Constitution of 1921. Cf. City of New Orleans v. Borey, 52 So.2d 728; Williams v. Guerre, 182 La. 745, 162 So. 609; Excelsior Planting & Manufacturing Co. v. Green, 39 La.Ann. 455, 1 So. 873; Conley v. City of Shreveport, 216 La. 78, 43 So.2d 223; Louisiana Board of Pharmacy v. Smith, 226 La. 537, 76 So.2d 722.

Appellees further contend that Act 153 of 1965 is unconstitutional for the reason that it violates the spirit and intent of the Home Rule Charter of the City of New Orleans in imposing upon the citizens of New Orleans changes in voting laws without an opportunity of expression of opinion.

The City of New Orleans is governed by a *Home Rule Charter,* effective May 1, 1954. This charter is provided for in Article XIV, Section 22, of the Louisiana Constitution of 1921; paragraph 6 of this section provides:

"The Legislature is hereby prohibited, subsequent to the Regular Session of 1950, from amending, modifying or repealing the herein established or future home rule charters of the City of New Orleans other than by general law which uniformly applies, both in terms and in effect, to all cities of the State. However, the Legislature shall have the right to classify cities according to total population based upon the last available Federal census and to enact legislation limited in its effect to any such class, but any legislation so enacted which is applicable to fewer than the five largest cities of the State including the City of New Orleans, shall not become operative in the City of New Orleans until submitted to and approved by a majority of the qualified electors of the City of New Orleans

voting thereon at an election to be held in said city in the manner hereinafter prescribed."

Paragraph 2 of Section 22 provides, "Subject to the limitations elsewhere contained in this Constitution, the City of New Orleans is hereby declared to have a home rule charter consisting of Act 159 of 1912 as amended through the regular legislative session of 1950, * * *." Paragraph 3 further provides, " * * * The City of New Orleans shall, however, not exercise any power or authority which is inconsistent or in conflict with any general law."

Section 9–201 of the Home Rule Charter of the City of New Orleans states:

"This Charter may be amended or replaced only by the affirmative vote of a majority of the qualified electors of the City voting upon such amendments or proposed Charters. Proposals to amend or replace this Charter may originate only in the following manner:

"(a) By ordinance of the Council.

"(b) By petition of not less than ten thousand of the duly qualified registered voters of the City filed with the Council, setting forth the proposed amendments or substitute home rule Charter."

Section 4–201 of the Charter provides for the election and term of the Mayor as follows:

"The electors of the City shall elect a Mayor on the first Tuesday following the first Monday in April, 1954, and in every fourth year thereafter. He shall take office on the first Monday in May. The election shall be conducted in accordance with the general election laws of the State. No person who shall have been elected for two full consecutive terms as Mayor under this Charter shall be eligible to succeed himself."

The above section is in accord with Section 10 of Article VIII of the Louisiana Constitution of 1921, which provides:

"Parochial elections, except in the Parish of Orleans, shall be held on the same day as the general State elections.

"In the City of New Orleans, the first parochial and municipal elections for all officers under this amendment to the Constitution, unless otherwise provided therein, shall be held on the Tuesday following the first Monday of April 1942, and the officers then elected shall serve for a term of four years, and their successors shall be elected on the Tuesday following the first Monday in April, 1946, and thereafter said elections shall take place every four years on the Tuesday following the first Monday of April. All officers so elected shall take their of-

fices on the first Monday in May following their election." As amended by Act 331 of 1936, adopted Nov. 3, 1936.[3]

■ Nowhere in the Home Rule Charter of the City of New Orleans do we find any mention of primary elections, which is the real subject matter of Act 153 of 1965 (we do not mean to say that the word "election" does not include primaries under certain facts and circumstances). Section 4–201, supra, is specific; it provides only for the general election, in the month of April of an election year, of a Mayor for the City of New Orleans; Section 22 of Article XIV of the Louisiana Constitution of 1921 likewise makes no mention of primary elections for nomination of Parochial and Municipal officers. Paragraph 6 of Section 22, supra, does state, however, that when certain legislation is applicable to fewer than the five largest cities of the State, including the City of New Orleans, it shall not become operative in the City of New Orleans until submitted to and approved by a majority of the qualified electors of the City. However, we do not find that Act 153 of 1965 falls within the legislation contemplated in Paragraph 6 of Section 22; Act 153 was enacted by the Legislature under its constitutional power to provide for par-

ty primary elections granted to it in Article VIII, Section 4, of the Louisiana Constitution of 1921. Reading Section 4 of Article VIII of the Constitution together with Section 22 of Article XIV, we do not find that it was the intention of the people of Louisiana, who adopted both sections, to take away from the Legislature the power to adopt primary election legislation for the City of New Orleans. This is particularly so because Paragraph 2 of Section 22, supra, states that the *Home Rule Charter of the City of New Orleans is subject to the limitations elsewhere found in the Constitution.*

■ We conclude, therefore, that under the instant facts, Act 153 of 1965 is not violative of the spirit and intent of the Home Rule Charter of the City of New Orleans; it does not modify, amend, or repeal any provision of said Charter. Cf. City of New Orleans v. Borey, La.App., 52 So.2d 728.

■ In the enactment of a statute the Legislature is supreme, except when restricted by constitutional authority. Conley v. City of Shreveport, 216 La. 78, 43 So.2d 223, Article VIII, Section 4, of the Louisiana Constitution of 1921, provides that "The Legislature shall enact laws to

---

3. It is to be noted that one paragraph of the above section of the Constitution *excepts* the Parish of Orleans, and another paragraph provides for Parochial and Municipal elections in the City of New Orleans. See, Thomas v. Board of School Directors, 136 La. 499, 67 So. 345; Clark v. City of Opelousas, 147 La. 1, 84 So. 433.

secure fairness in party primary elections, conventions, or other methods of naming party candidates. * * *" The constitutional mandate is *fairness*, and, as stated in Wilty v. Jefferson Parish Democratic Executive Committee, 245 La. 145, 157 So. 2d 718, " 'Fairness' in party primary elections is the primary spirit of our law, and our decision in this matter will be predicated on such quality or principle."

We do not find any allegations in plaintiffs' petitions to the effect that Act 153 of 1965 is either unfair, arbitrary or capricious in its mandates; neither do we find any allegation stating that the operation of the act, if found constitutional, would have an unfair, arbitrary or capricious effect upon the intended campaigns of plaintiffs.

Plaintiff Buras testified that his reason for seeking a declaratory judgment was his fear of having the instant act declared unconstitutional after he had expended funds. Plaintiff Comiskey stipulated that he was of the opinion that the act was unconstitutional as to form and violated his constitutional rights.

■ As stated supra, the Orleans Parish Republican Executive Committee stated in answer that the enactment of Act 153 of 1965 had the effect of disfranchising voters who had charged their party affiliation within the past month (the answer was filed on July 6, 1965). LSA–R.S. 18:33; Cf. Sciambra v. Orleans Parish Republican Ex-

ecutive Committee, La.App., 69 So.2d 171. Counsel for this defendant stipulated that Dr. Robert Gibbs would testify that he intends to change his registration from Democrat to Republican before July 29, 1965 in order to run for the Councilmanic position of District "E", and in the event the instant law was declared constitutional he would be denied such right. Dr. Gibbs, apparently, was not interested enough to become a party to these proceedings; his candidacy was in a stage of speculation. Under the circumstances, the Committee cannot champion his rights.

■ Under the facts and circumstances stated above, we do not find that the Legislature acted in an unfair manner in enacting Act 153 of 1965. This finding is substantiated by the fact that no proof was offered to show that the shortening of the length of the campaigns for Municipal and Parochial officers in the City of New Orleans would work a hardship upon plaintiffs. Also, no showing was made by the respective political parties of the Parish of Orleans that they would be impeded in carrying out the functions of their offices by the provision of the instant act. LSA–R.S. 18:281–283–285; Cf. Yuratich v. Plaquemines Parish Democratic Executive Committee, La.App., 32 So.2d 647.

■ Having found that Act 153 of 1965 does not violate Section 16 of Article III of the Louisiana Constitution of 1921,

that it does not violate the Home Rule Charter of the City of New Orleans, that it was enacted by the Legislature to secure fairness,[4] and cognizant of the facts that acts of the Legislature are presumed to be constitutional and are only held otherwise when no other alternative presents itself (Interstate Trust & Banking Co. v. Baker, 169 La. 766, 126 So. 54; Polizzi v. Lotz, 240 La. 734, 125 So.2d 146; State v. Gatlin, 241 La. 321, 129 So.2d 4), and that it is the duty of the Court to uphold a statute unless it clearly violates the organic law, any doubt being resolved in favor of the validity of a solemn expression of the legislative will (Police Jury of St. Charles Parish v. St. Charles Parish Waterworks District No. 2, 243 La. 764, 146 So.2d 800), we now approach a determination of the correctness of the trial judge's ruling herein.

Article IV, Section 4, of the Louisiana Constitution of 1921 provides:

"The Legislature shall not pass any local or special law on the following specified subjects:

"For the holding and conducting of elections, or fixing or changing the place of voting."

Article IV, Section 5, of the Louisiana Constitution of 1921 provides:

"The Legislature shall not indirectly enact special or local laws by the partial repeal of a general law; but laws repealing local or special laws may be passed."

In the case of Kotch v. Board of River Port Pilot Commissioners, 209 La. 737, 25 So.2d 527, 330 U.S. 552, 67 S.Ct. 910, 91 L.Ed. 1093, this Court stated:

"There are a number of decisions of this Court holding that a statute is not a special or local law merely because of the fact that the conditions under which it can operate prevail in only certain parts of the State. * * *

" * * *

" * * * The test of whether a law is special or local is whether it operates only on a certain number of per-

4. Counsel for the City of New Orleans states in brief:—"The Legislature has the power to enact laws concerning primaries in one section of the State providing this law is not an arbitrary or capricious law. In New Orleans, the Mardi Gras season is a vital one for the City. It is within the power of the Legislature to set party primary elections in this part of the State not to conflict with the Mardi Gras. This is not an arbitrary or capricious law as to this part of the State, as this Court knows Mardi Gras has a more greater import in the City of New Orleans than it has in the rest of the State. The Legislature might in the future set party primary elections in other parts of the State on different dates so that it is most convenient for the people in the other parts of the State. As long as these laws are passed in order to secure fairness in these primary elections and the laws are not arbitrary or capricious as to a particular part of the state affected, the Constitution would not be violated at either Article VIII, Section 4, or, at Article IV. Section 4."

sons, within a class, but does not affect generally all persons within that class. * * *"

The trial court invoked the above test in the instant case and found:

"Applying that test to the Act before the Court, the Court must conclude that the Act provides a method of determining the date of primary elections for all municipalities and wards of the State except New Orleans, and a different method for determining the date of primary elections in New Orleans. It therefore operates on a certain number of persons within a class (all voters in the City of New Orleans) but does not affect generally all persons (all voters of municipalities and wards outside of the City of New Orleans) within the same class."

■ It is true, as found by the trial judge, that the word "elections" as stated in Section 4, supra, encompasses primary elections. United States of America v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368; Webb v. Parish Council of Parish of East Baton Rouge, 217 La. 926, 47 So.2d 718; Cf. dissenting opinion to refusal of Certiorari, Stassen for President Citizens Committee v. Jordan, Secretary of State of California, 377 U.S. 927, 84 S.Ct. 1195, 12 L.Ed.2d 293; Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821; Terry v. Adams, 345 U.S. 461, 73 S.Ct. 809, 97

L.Ed. 1152. Act 153 of 1965 embraces "elections", a subject prohibited by the Constitution in the enactment of local or special laws. All laws embracing such a subject, however, are not local or special laws. The following excerpt from a comment by Huntington Odom in 16 La.L.Rev., p. 778, is helpful:

"It is virtually impossible to state an acceptable rule as to what criteria the court will use in ascertaining whether an act is a special (or local) or general law. The following guides might be helpful, though it is not suggested that they are all inclusive. First, determine the scope of the classification created by the statute; then ascertain whether it is a reasonable classification; that is, whether there is a prudent basis for segregation of the particular class for separate treatment. If the classification is found to be reasonable and if all encompassed by it are treated equally, then the act is general and valid. If there is not equal treatment of all embraced by the class created, then the act is special or local. If the statute provides for unequal treatment within the class, then reference must be made to the enumerated instances of article IV, section 4, to ascertain whether a special or local law in that particular field is prohibited. It should be noted that these specially enumerated prohibitions merely constitute a

constitutional declaration of whether a particular subject matter is of such a general nature as to prohibit unequal or special treatment by the Legislature. If it be found that the special treatment of the subject matter is not prohibited, then it must be determined whether the publication requirements have been complied with. If the law is general in application, or special and not of the type specifically prohibited, then it is valid." See also, 82 C.J.S. Statutes § 170, Determination of Character, p. 286.

The verbiage of Act 153 of 1965 is very similar to that recited in Section 10 of Article VIII of the Louisiana Constitution of 1921, supra. (As stated supra, Paragraph 1 of the section states " * * * except in the Parish of Orleans * * * "; Paragraph 2 states "In the City of New Orleans * * * ") *It would seem reasonable to say that exceptions made by the Constitution could be made by legislative acts.*

" * * * It has been held consistently by this court that the expression in a statute 'the parish of Orleans excepted,' which restricts the application of many laws to that part of the state outside of the city of New Orleans, does not make the laws local or special laws, as contradistinguished from gen-

eral laws. * * * " Clark v. City of Opelousas, 147 La. 1, 84 So. 433. Cf. Benedict v. City of New Orleans, 115 La. 645, 39 So. 792; Blanchard v. Abraham, 115 La. 989, 40 So. 379.

An Act which defines and relates to every sub-division of the state except the city of New Orleans is not a local or special law. Thomas v. Board of School Directors, 136 La. 499, 67 So. 345.

The general purpose of Act 153 of 1965 is to provide for the calling of *primary elections* for the nomination of Municipal and Parochial officers and to provide for the meeting of the respective political parties for the purpose of ordering such elections. Both Paragraph A and Paragraph B of Section 1, supra, make such provisions; the law operates generally throughout the State of Louisiana insofar as it orders that there be *primaries* in all of the subdivisions of the State.

" * * * A law, general in its terms, applying to all persons alike throughout the state does not become a local law within the meaning of the said articles 48 and 49 of the Constitution simply because the conditions under which it can have operation prevail only in certain parts of the state. Such laws of restricted operation are as numerous, if not more numerous, than

other laws. Indeed, this is so plain that there can be no necessity for going extensively into the subject. * * *" State v. Donato, 127 La. 393, 53 So. 662.

"The real distinction between public or general laws and local or special laws is, that the former affect the community as a whole, whether throughout the State or one of its subdivisions; and the latter affect private persons, private property, private or local private interests." State v. Dalon, 35 La. Ann. 1141, 1144.

The instant act provides uniformly for the calling of primary elections in all subdivisions of the State except in the City of New Orleans; no specific date is set out for the holding of such primary elections; all that is required is that the respective committees of the political parties shall meet at certain times before the elections. The act then provides that beginning in the year 1965, the first primary election in the City of New Orleans shall be held on the first Saturday after the first Monday in November. The act still further provides when the respective political party committees shall meet to call primary elections. The provisions with respect to New Orleans are uniform throughout the City. These provisions certainly do not have the effect of changing the general and all-embracing character of the legislation—

providing for the calling of primary elections. Peck v. City of New Orleans, 199 La. 76, 5 So.2d 508. The provision excepting the City of New Orleans and the one relating to it are special, "but it is not unusual or objectionable to have special provisions included in general statutes. These provisions do not affect the general purpose of the law or violate Section 4 of Article 4 of the Constitution." Peck v. City of New Orleans, supra. We conclude that Act 153 of 1965 is a general law and is therefore not violative of Section 4 of Article IV of the Louisiana Constitution of 1921. Williams v. Guerre, 182 La. 745, 162 So. 609; State v. Clement, 188 La. 923, 178 So. 493; Knapp v. Jefferson-Plaquemines Drainage District, 224 La. 105, 68 So.2d 774; State ex rel. Grosch, et al. v. City of New Orleans, 211 La. 241, 29 So.2d 778; Jefferson Parish School District v. Jefferson Parish Democratic Executive Committee, 246 La. 51, 163 So.2d 348; City of New Orleans v. Borey, 52 So.2d 728; 82 C.J.S. Statutes § 161, Indirect Enactment of Special Laws by Partial Repeal of General Laws, p. 268; 82 C.J.S. Statutes § 168, Local Laws, p. 283; 82 C.J.S. Statutes § 166, Special Laws, p. 279; 16 C.J.S. Constitutional Law § 100, p. 468.

Having arrived at the above conclusion that Act 153 of 1965 is not a local or special law, it is not necessary that we determine whether it is violative of Section 5 of Arti-

cle IV of the Louisiana Constitution of 1921.

For convenience, we repeat herewith the decree handed down by us in this matter on Monday, July 26, 1965.

The judgments appealed from are annulled and set aside, and the suits of plaintiffs dismissed at their costs.

SUMMERS, J., concurs in the result.